**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Joseph H. Carlone, individually and on behalf of other similarly situated individuals, | ) ) ) | CIVIL ACTION NO.: 3:12-cv-00207(JCH) |
| Plaintiffs, | ) ) ) | |
| v. | ) | November 30, 2012 |
| Progressive Casualty Insurance Company, | ) ) ) | |
| Defendant. | | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF JOSEPH CARLONE'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 2 |
| | A. Progressive Is An Insurance Company That Is In The Business Of Providing Insurance | 2 |
| | B. Carlone's Employment History With Progressive | 3 |
| | C. Carlone Was Not Merely An Investigator - He Adjusted Insurance Claims | 3 |
| | D. Carlone Made Insurance Coverage Decisions | 4 |
| | E. Carlone Did Not Merely "Code" Liability – He Made Liability Decisions | 5 |
| | F. Carlone Settled Claims | 7 |
| | G. Carlone Was Evaluated Based On His Claims Determinations | 7 |
| | H. Carlone Worked As A CGA Adjusting Claims - He Was Not Simply Taking Telephone Calls | 8 |
| III. | LAW AND ARGUMENT | 9 |
| | A. Summary Judgment Standard | 9 |
| | B. Carlone's Summary Judgment Motion Is Based On A Single Element Of The Administrative Exemption | 10 |
| | C. Overwhelming Case Law And Department Of Labor Regulations Have Conclusively Rejected Carlone's Argument That Insurance Claims Adjusters Are Non-Exempt Production Workers Who Produce Their Employers' Product | 11 |
| | D. Carlone's Primary Duty Was The Administratively Exempt Work Of Adjusting Insurance Claims By Making Coverage And Liability Decisions | 16 |
| | 1. The Actual Job Duties And Not Carlone's Statement That He Was Not A Claims Adjuster Control | 16 |
| | 2. Carlone Was Not An "Investigator," But Rather Worked As A CGA And Was Responsible For Making Coverage And Liability Decisions | 17 |
| | 3. Carlone Did Not Just "Work Toward The Resolution Of Claims" – He Decided Claims | 17 |
| | 4. Carlone Determined What Information Was Needed To Make His Coverage And Liability Decisions | 18 |
| | 5. Carlone Made Coverage Decisions And Recommendations | 18 |
| | 6. Carlone Did Not Just "Code Liability" – He Determined Liability | 19 |

## TABLE OF CONTENTS
(continued)

Page

7. Carlone Only "Assigned" Claims For Purposes Of Making A Determination As To The Amount Of Property Damage ........................ 20

8. Carlone Was Responsible For Settling Claims And Made Credibility Decisions During The Course Of Determining Coverage And Liability ........................ 21

E. These Undisputed Facts Confirm That Carlone's Primary Duty Was The Performance Of Office Work Directly Related To Progressive's General Business Operations ........................ 21

F. Carlone's Cited Legal Authorities Are Inapposite ........................ 25

G. Carlone Concedes He Is Unable To Establish The Other Prongs Of The Administrative Exemption As A Matter Of Law ........................ 28

IV. CONCLUSION ........................ 29

CERTIFICATE OF SERVICE ........................ 31

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Celotex Corp. v. Catrett*,
477 U.S. 323 (1986) ..... 9

*Cheatham v. Allstate Ins. Co.*,
465 F.3d 578 (5th Cir. 2006) ..... passim

*Davis v. JP Morgan Chase & Co.*,
587 F.3d 529 (2d Cir. 2009) ..... 23, 27

*Eicher v. Advanced Business Integrators, Inc.*,
151 Cal. App. 4th 1363 (2007) ..... 27

*Ford v. Allstate Ins. Co.*,
CV020389937, 2005 Conn. Super. LEXIS 76 (Conn. Super. Ct. Jan. 5, 2005) ..... 10, 24

*Gusdonovich v. Business Information Co.*,
705 F. Supp. 262 (W.D. Pa. 1987) ..... 26

*Harris v. Liberty Mutual Ins. Co.*,
207 Cal. App. 4th 1225 (Cal. App. Ct, 2nd App. Dist., July 23, 2012) ..... 27

*Holland v. State of Connecticut*,
No. 3:10-cv-1156, 2012 U.S. Dist. LEXIS 88314 (D. Conn. June 26, 2012) ..... 9

*Jastremski v. Safeco Ins. Cos.*,
3:01-cv-7382, 2003 U.S. Dist. LEXIS 1327 (S.D. Ohio Jan. 31, 2003) ..... passim

*McAllister v. Transamerica Occidental Life Ins. Co.*,
325 F.3d 997 (8th Cir. 2003) ..... 10

*Mertes v. Milardo Photography, Inc.*,
No. PJRCV030101233S, 2003 Conn. Super. LEXIS 2580 (Conn. Super. Ct. Sept. 10, 2003) ..... 11

*Miller v. Ethan Allen Global, Inc.*,
2012 U.S. Dist. LEXIS 72572 (D. Conn. May 24, 2012) ..... 9

*Miller v. Farmers Ins. Exch. (In re Farmers Ins. Exch.)*,
481 F.3d 1119 (9th Cir. 2007) ..... passim

*Neary v. Metro. Prop. & Cas. Ins. Co.*,
517 F. Supp. 2d 606 (D. Conn. 2007) ..... 27, 28

*Palacio v. Progressive Ins. Co.*,
244 F. Supp. 2d 1040 (C.D. Cal. 2002) ........................................................... passim

*Reich v. American Int'l Adjustment Co.*,
902 F. Supp. 321 (D. Conn. 1994) ........................................................................27

*Reich v. State of New York*,
3 F.3d 581 (2d Cir. 1993) ...................................................................................23, 26, 27

*Robinson-Smith v. Government Employees Ins. Co.*,
590 F.3d 886 (D.C. Cir. 2010) ......................................................................10, 21, 23, 28

*Roe-Midgett*,
512 F.3d 865 (7th Cir. 2008) ........................................................................... passim

*Talbert v. American Risk Ins. Co.*,
No. 10-20355, 405 Fed. Appx. 848 (5th Cir. Dec. 20, 2010) ..................................... passim

*Withrow v. Sedgwick Claims Management Service, Inc.*,
841 F. Supp. 2d 972 (S.D. W.Va. 2012) ............................................................. passim

**STATUTES**

29 C.F.R. § 541.200(a) ....................................................................................11, 28

29 C.F.R. § 541.201(b) ........................................................................................25

29 C.F.R. § 541.203 ........................................................................................14, 15

29 C.F.R. § 541.203(a) ....................................................................................... passim

29 C.F.R. § 541.205(c)(5) ....................................................................................14

29 C.F.R. § 541.700(a) ........................................................................................22

69 Fed. Reg. Vol. 69, No. 79, 22122 (April 23, 2004) ...............................................14

29 C.F.R. § 541.200(a)(2) ..............................................................................13, 16

Conn. Gen. Stat. § 31-58 *et seq.* .............................................................................11

Reg. Conn. State Agencies § 31-60-15 .......................................................................11

**RULES**

California Rule of Court 8.1115(a) ...........................................................................27

Fed. R. Civ. P. 56(a) ..............................................................................................9

Local Rule 56(a)1 ....................5

Local Rule 56(a)2 ....................2

**OTHER AUTHORITIES**

U.S. Department of Labor Fact Sheet #17L ....................23, 25

## I. INTRODUCTION

Plaintiff Joseph Carlone's summary judgment motion only confirms that Defendant Progressive Casualty Insurance Company ("Progressive"), not Carlone, is entitled to judgment as a matter of law. Focusing exclusively on a single prong of the FLSA's administrative exemption, Carlone alleges that he was a non-exempt "production worker" because he "produced" Progressive's claims department's "product" of resolving claims. This argument is fundamentally flawed because Progressive is in the business of writing and selling insurance policies – not resolving claims. The fact that Progressive is in the business of writing and selling insurance policies already has been decided as a matter of law in *Palacio v. Progressive Ins. Co.*, 244 F. Supp. 2d 1040, 1047 (C.D. Cal. 2002), and is reinforced by almost 50 years of regulatory law and judicial opinions. Indeed, Progressive is no more "in the business" of resolving claims because it has a claims department than it is "in the business" of providing legal services because it has a legal department.

Carlone also suggests that he was misclassified because the duties he performed for Progressive as a Claims Generalist Associate ("CGA") were not directly related to Progressive's general business operations, and that he did not work as a claims adjuster. However, Carlone cannot avoid the undisputed evidence, particularly his own written ClaimStation diaries, which conclusively establishes that his primary duties as a CGA involved adjusting insurance claims by making coverage and liability decisions. These are administratively exempt duties as a matter of law. 29 C.F.R. § 541.203(a).

As set forth herein, Carlone was properly classified as an exempt employee under the FLSA and the Connecticut Minimum Wage Act. Accordingly, not only should Carlone's motion for summary judgment be denied, but judgment should be entered on behalf of Progressive.[1]

## II. STATEMENT OF FACTS

### A. Progressive Is An Insurance Company That Is In The Business Of Providing Insurance.

Progressive is an insurance company. Progressive in the business of writing and selling personal automobile insurance and other types of specialty property-casualty insurance. (Deposition of Joseph Smith ("Smith Dep.") 44; Supplemental Declaration of Joseph Smith ("Supp. Smith Decl.") ¶ 2); *Palacio v. Progressive Ins. Co.*, 244 F. Supp. 2d 1040, 1047 (C.D. Cal. 2002).[2] Of course, while Progressive has a claims department dedicated to the necessary task of adjusting insurance claims and Progressive strives to provide excellent customer service to its customers, Progressive is not "in the business" of adjusting insurance claims. It is in the business of writing and selling insurance. (Supp. Smith Decl. ¶ 2). In fact, only approximately ten percent of Progressive insureds ever make a claim on their Progressive insurance policy. (*Id.*).

That Progressive is not a claims handling organization was recognized as a matter of law in *Palacio* – a case which held that a Progressive claims agent (an analogous position to the CGA position at issue in this case) was administratively exempt. The *Palacio* court specifically held: "Progressive is not in the business of handling claims. Rather, it is in the business of

---

[1] On October 26, 2012, Progressive likewise filed a Motion for Summary Judgment, requesting that the Court enter judgment in its favor on Joseph Carlone's individual claims. *See* Doc. No. 54.

[2] Defendant's Appendix of Evidentiary Materials ("Appendix"), being filed concurrently herewith, contains copies of all evidentiary materials cited herein and in Progressive's Local Rule 56(a)2 Statement In Opposition to Plaintiff's Motion for Summary Judgment and Local Rule 56(a)2 Statement of Additional Facts In Opposition to Plaintiff's Motion for Summary Judgment. The Supplemental Declaration of Joseph Smith is attached to the Appendix at Tab H. Cited pages and excerpts from the deposition of Joseph Smith are attached to the Appendix at Tab B.

writing and selling automobile insurance. Claims handling occurs within a functional department as a type of ancillary customer service." *Id.* at 1047.

**B. Carlone's Employment History With Progressive.**

Carlone was hired by Progressive in 2007 in the position of Claims Service Representative ("CSR") and worked out of Progressive's service center in Newington, Connecticut. (Deposition of Joseph Carlone ("Carlone Dep.") 16-17, 31).[3] Carlone was promoted into a CGA position with Progressive in approximately March 2010, and worked at Progressive's Glastonbury, Connecticut claims office. (Carlone Dep. at 16-17, 35, 53-54, Ex. 5, job description; Complaint at ¶ 7).[4] All CGAs, including Carlone, receive a salary of at least $35,000 per year, or approximately $700 per week, and Carlone concedes that he met the salary basis test under both the FLSA and Connecticut state law. (Carlone Dep. 66-67; Doc. 52, Carlone MSJ, p. 9, n. 6). Carlone and the other Glastonbury CGAs moved to Progressive's renovated Newington location in the summer of 2011. (Declaration of Justine Cedeno ("Cedeno Decl.") ¶ 2; Carlone Dep. 35-36).[5] Carlone no longer works as a CGA. (Declaration of Joseph Smith ("Smith Decl.") ¶ 9).[6] Since October 2012, Carlone has worked for Progressive in a completely different role as an Estimator, a non-exempt position in which he receives overtime compensation for any hours worked over 40 during any work week. (*Id.*).

**C. Carlone Was Not Merely An Investigator--He Adjusted Insurance Claims.**

Progressive's Newington CGAs are claims adjusters who focus on making insurance coverage and liability decisions. (Cedeno Decl. ¶ 22; *see* Smith Decl. Exs. A and B, selection of

---

[3] Cited pages and exhibits from the Deposition of Joseph Carlone are attached to the Appendix at Tab A.

[4] While Progressive's CGA position is also known by the phrase "File Owner" and was referred to as such in Carlone's deposition, it is referred to by its official job title herein. (Carlone Dep. 53-4, Ex. 5; Smith Dep. 32-33).

[5] The Declaration of Justine Cedeno is attached to the Appendix at Tab C.

[6] The Declaration of Joseph Smith is attached to the Appendix at Tab D.

Carlone's ClaimStation notes). Progressive's Newington CGAs are assigned claims when there is a question as to whether the claim is covered by a Progressive insurance policy and/or as to the liability of the party or parties involved in the accident. (Cedeno Decl. ¶ 23). Once a claim is assigned to a CGA such as Carlone, the CGA is expected to handle the claim from beginning to end. (Cedeno Decl. ¶ 24).

Carlone estimated that he handled approximately 40 claims per week. (Carlone Dep. 80-81). Carlone's primary responsibility as a CGA was to accurately determine whether a claim was covered by a Progressive insurance policy and, if so, to then determine the liability of the party or parties involved in the accident. (Cedeno Decl. ¶ 24; *see* Smith Decl. Exs. A and B). Carlone did not perform manual labor and was not responsible for writing or selling Progressive insurance policies. (Cedeno Decl. ¶ 24; Carlone Dep. 66).

### D. <u>Carlone Made Insurance Coverage Decisions</u>.

Depending on the claim, CGAs are expected to determine coverage by performing duties such as reviewing applicable insurance policies, interviewing the insured and other witnesses, reviewing police reports, resolving coverage verification questions (also known as "CVQs") and conducting any other necessary investigations. (Cedeno Decl. ¶ 28; Carlone Dep. 70-74, 78-80, 172-73; *see also* Smith Decl. Ex. A, including Prog_001664; Prog_002183; Prog_003206). CVQs are communicated through Progressive's ClaimStation computer system, which alerts CGAs that, based on the reported accident and relevant policy terms, there are certain issues the CGA must resolve prior determining whether a claim is covered under the policy. (Smith Dep. 152-53). If Carlone "cleared" the CVQs, and thus confirmed the claim was covered (which was most of the time), that decision was final and there was coverage on the claim. (Carlone Dep. 74-75, 120-22, 181-84).

In addition to issues identified in the CVQs, there are coverage issues that would not necessarily result in a CVQ being generated. (Cedeno Decl. ¶ 29). Thus, CGAs are expected to use their judgment to determine and address all coverage issues, and cannot merely rely on those generated with a CVQ. (Cedeno Decl. ¶ 30). If a CGA is not able to answer and clear a CVQ for an assigned claim and/or believes that the claim is not covered for some other reason, the CGA is expected to recommend that coverage for the claim be denied. (Cedeno Decl. ¶ 31).

**E. <u>Carlone Did Not Merely "Code" Liability – He Made Liability Decisions</u>.**

It is Progressive's obligation to pay the correct amount of a claim, and that can require a determination of who is at fault for the accident. (Carlone Dep. 80). If a CGA determines that coverage exists for a claim, he is then responsible for determining liability and comparative negligence. (Smith Dep. 233; Carlone Dep. 76-82, 85-86, 222-23, 249-51, Ex. 36; Cedeno Decl. ¶ 33). Notwithstanding Carlone's poor attempt at downplaying his role in this process, Carlone agrees that it is undisputed that "[b]ased on the facts he has gathered," he makes an "assessment of who is liable and to what extent." *See* Plaintiff's Local Rule 56(a)1 Statement, ¶ 30. Carlone conferred with his supervisor on some of his liability decisions (particularly if they were complex), but his supervisor usually accepted his recommended decisions. (Carlone Dep. 82-83).

Progressive's ClaimStation computer system has a "ClaimStation notes" section where Carlone made real time notes of virtually all of his claims activities. (Carlone Dep. at 248-49). Carlone's ClaimStation notes are accurate and the best available record of the work he performed as a CGA on his assigned claims. (*Id.* at 248). Contrary to any suggestion by Carlone that he merely "coded" liability, his written ClaimStation diaries show that he performed the duties of an administratively exempt "insurance claims adjuster" as defined by the Department of Labor.

*Compare* Smith Decl. Exs. A and B *with* 29 C.F.R. § 541.203(a).[7] Carlone's own written words show that he (1) interviewed insureds and witnesses; (2) inspected property damage for purposes of making liability decisions; (3) made credibility decisions; (4) negotiated settlements with other insurance companies regarding comparative negligence, and (5) made liability decisions as a primary part of his job as a CGA. Carlone's ClaimStation diary is replete with entries such as:

- **15:25:39 LIABILITY DECISION COMPLETE . . . LIABILITY DECISION BASED ON RECORDED STATEMENTS** FROM ID, CD, BOTH WITNESSES, POLICE REPORT AND **SCENE INVESTIGATION** . . . THEREFORE THE MAJORITY RESPONSIBILITY FALLS TO THE ID. **I FIND THE ID 60% AT FAULT AND THE CD 40%.** (Smith Decl. Ex. A, Prog_001339) (emphasis added).

- I M ON DIARY TO CALL OUT AGAIN TOMORROW IF THEY DON T RETURN MY CALL TODAY. **MY GOAL IS TO REACH AN UPFRONT AGREEMENT WITH THEM SO AS TO AVOID ARBITRATION, WHICH WOULD DELAY THE DECISION BY 6-9 MONTHS**. (Smith Decl. Ex. A, Prog_003713) (emphasis added).

- **04/05/2012 12:55:42 LIABILITY DECISION COMPLETE . . . DECISION BASED ON** PR, **STATEMENTS, VEHICLE DAMAGES,** SCENE INVESTIGATION VIA GOOGLE MAPS . . . **FINDING BOTH PARTIES EQUALLY AT FAULT.** (Smith Decl. Ex. A, Prog_003714) (emphasis added).

- **11:50:15 LIABILITY DECISION COMPLETE** . . . CHECKED GOOGLE STREET VIEW. WEST ROCK IS SUFFICIENTLY WIDE ENOUGH THAT COD COULD HAVE GOTTEN PAST IV EVEN WITH VEHS PARKED ON EITHER SIDE OF THE ROAD . . . **FINDING 20% FAULT ON INSD**. (Smith Decl. Ex. A, Prog_002031) (emphasis added).

- **09/03/2010 11:43:53 LIABILITY DECISION COMPLETE**. . . . PR. NOD STATES HE WAS TRAVELING SB ON MAIN STREET AND APPROACHING INTERSECTION OF MAIN AND RETREAT . . . **I FIND HER 75% AT FAULT FOR THIS ACCIDENT**. THE NOD HAD THE LAST GOOD CHANCE TO AVOID A COLLISION AND **SO THE BALANCE OF FAULT FALLS ON HIM**. (Smith Decl. Ex. A, Prog_00996) (emphasis added).

- **16:12:00 LIABILITY DECISION COMPLETE** . . . **DECISION BASED ON R/S FROM BOTH PARTIES**, PR, GOOGLE STREET VIEW, AND FOLLOW UP R/S FROM INSD . . . **FINDING 10 PERCENT ON INSD**. (Smith Decl. Ex. A, Prog_003003) (emphasis added).

---

[7] 29 C.F.R. § 541.203(a) provides that: "Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, **if their duties include** activities such as **interviewing insureds, witnesses** and physicians; **inspecting property damage**; reviewing factual information to prepare damage estimates; **evaluating and making recommendations regarding coverage of claims; determining liability** and total value of a claim; **negotiating settlements**; and making recommendations regarding litigation." (emphasis added).

- 13:52:09 **LIABILITY DECISION COMPLETE. . . . DECISION BASED ON** STATEMENTS FROM BOTH DRIVERS **AND LOCATIONS OF DAMAGES** . . .(Smith Decl. Ex. A, Prog_003826) (emphasis added).

- **05/29/2012 10:48:24 LIABILITY DECISION COMPLETE. . . . DECISION BASED ON STATEMENTS, VEHICLE DAMAGES, AND OVERHEAD VIEW OF SCENE** . . . ASIDE FROM STATING SHE HAD A YELLOW LIGHT **SHE WASN'T ABLE TO ADD FURTHER TO THE LIAB INVESTIGATION** . . . **EXPLAINED LIAB DECISION.** STATES SHE HAS AN ATTNY NOW. ASKED HER TO HAVE HIM GIVE ME A CALL. (Smith Decl. Ex. A, Prog_003408) (emphasis added).

- 12:54:17 **LIABILITY DECISION COMPLETE . . . DECISION BASED ON PR AND NOD'S STATEMENT**. PR POINTS OUT THAT COLLISION OCCURRED 93 FEET PAST THE POINT WHERE IV WOULD HAVE PULLED OUT AT THE LIGHT. THIS MAKES CD'S STATEMENT THAT THE IV PULLED OUT SUDDENLY RIGHT IN FRONT OF HIM **LESS CREDIBLE**. IF CD'S STATEMENT WAS ACCURATE THE COLLISION WOULD HAVE BEEN CLOSER TO THE INTERSECTION. AGREED AND TICKETED COD. (Smith Decl. Ex. A, Prog_003120) (emphasis added).

### F. <u>Carlone Settled Claims</u>.

After Carlone verified that a claim was covered by a Progressive insurance policy and made a liability determination, Progressive paid for damages or injuries related to the claim up to the applicable policy limit. (Cedeno Decl. ¶ 35; Carlone Dep. 181-84). There was no limit per se on the amount of property damage Carlone or other CGAs could authorize to be paid. (Cedeno Decl. ¶ 35; Carlone Dep. 181-84). Rather, Carlone's authority to authorize payment for vehicle property damage was limited only by the applicable policy limit for property damage, which could be $100,000 or more for a single claim. (Cedeno Decl. ¶ 35; Carlone Dep. 181-84). Carlone had authority to personally sign and authorize such payments up to $5,000 without any countersignature and could sign and authorize checks in excess of $5,000 as long as he received a second signature on the check. (Carlone Dep. 237-39). Progressive paid over $800,000 dollars as a direct result of Carlone's coverage and liability decisions. (Smith Decl. ¶ 8).

### G. <u>Carlone Was Evaluated Based On His Claims Determinations</u>.

A team of Progressive managers periodically conduct a quality control review pertaining to all aspects of select claims after the files have been closed. (Carlone Dep. 186-88, Ex. 22).

The results of these reviews are documented on "QA Review" forms. (*Id.*). This indisputable proof shows that Carlone was evaluated based on the very same duties the Department of Labor deems sufficient to classify an employee as an administratively exempt insurance claims adjuster under 29 C.F.R. § 541.203(a). Over and over, Carlone was reviewed based on how he performed his primary duties of deciding coverage and liability:

- "What you did well (Strengths) . . . **Coverage & liability timely and accurate**" (Carlone Dep. Ex. 22, Claim No. 1937357, p. 2);

- "What you did well . . . **Policy. Ensure that you assess policy coverage before speaking with your Insured.**" (*Id.*; Claim No. 11-5234115, p. 2) ;

- "What you did well . . . You addressed all her concerns and completed an appropriate commercial investigation . . . **Your liability decision was accurate as well** . . . You also added a manual CVQ which made it impossible to be missed." (*Id.*; Claim No. 11-1533558, p. 2);

- "What you did well . . . **This is a great example of a difficult liability decision.** You obtained all relevant information to explain to the Insured why the decision went this way. Though she was upset with the decision, she was not upset with Progressive as we explained our thorough investigation and the evidence we presented." (*Id.*; Claim No. 11-3131721, pp. 2-3);

- "What you did well . . . Your statement quality was great. You asked all the appropriate questions needed to **determine an accurate liability decision.**" (*Id.*; Claim # 11-3127403, p. 2).

Carlone's performance reviews also verify that he was evaluated based on his liability and coverage investigations:

- "**You have maintained your quality regarding your liability and coverage investigations . . . You continue to be a sounding board for your peers regarding complex liability and coverage investigations** . . . You are the SIU delegate and **handle very difficult coverage and liability claims.**" (Carlone Dep. 138, 141-42, 147-48, Ex. 14, p. 1).

### H. <u>Carlone Worked As A CGA Adjusting Claims - He Was Not Simply Taking Telephone Calls</u>.

As a CGA, Carlone occasionally took general telephone calls that came into the Newington office, which are known as "available calls." (Carlone Dep. 196-201). These are not

calls that went directly to Carlone, such as calls from insureds of his assigned claims, and Carlone did not receive "available calls" unless he placed himself in "available mode." (*Id.*). While Carlone suggests that he spent a significant amount of time receiving available calls, the undisputed evidence shows the opposite is true. For example, in December 2011, Carlone worked between 160 and 170 hours. (*Id.* at 200-01). Of this time, he was in "available mode" (meaning that he could take calls) for approximately 24 hours and spent only 8 hours actually responding to those calls. (*Id.* at 201-02). Carlone's weekly call records from July 24, 2011 through July 14, 2012 further show that Carlone spent minimal time answering "available calls." (Cedeno Decl. ¶ 38, Ex. 1).

## III. LAW AND ARGUMENT

### A. Summary Judgment Standard.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 323, 324 (1986); *Holland v. State of Connecticut*, No. 3:10-cv-1156, 2012 U.S. Dist. LEXIS 88314 (D. Conn. June 26, 2012);[8] *Miller v. Ethan Allen Global, Inc.*, 2012 U.S. Dist. LEXIS 72572 at *9-10 (D. Conn. May 24, 2012). Carlone cannot carry this burden. The facts show that he is not entitled to judgment as a matter of law.

Furthermore, contrary to Carlone's suggestion that plaintiffs are "frequently granted summary judgment in overtime misclassification cases" (Doc. 52, Carlone MSJ, p. 8), because the law is so well established, summary judgment is regularly entered *on behalf of defendant insurance companies* in overtime misclassification cases brought by employees such as Carlone

[8] Copies of cited unreported cases are attached to the Appendix at Tab E.

who make insurance coverage and liability decisions. *See, e.g., Miller v. Farmers Ins. Exch. (In re Farmers Ins. Exch.)*, 481 F.3d 1119, 1124 (9th Cir. 2007); *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578 (5th Cir. 2006); *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997 (8th Cir. 2003); *Robinson-Smith v. Government Employees Ins. Co.*, 590 F.3d 886, 897 (D.C. Cir. 2010); *Talbert v. American Risk Ins. Co.*, No. 10-20355, 405 Fed. Appx. 848 at *8 (5th Cir. Dec. 20, 2010); *Ford v. Allstate Ins. Co.*, CV020389937, 2005 Conn. Super. LEXIS 76 (Conn. Super. Ct. Jan. 5, 2005); *Withrow v. Sedgwick Claims Management Service, Inc.*, 841 F. Supp. 2d 972, 979 (S.D. W.Va. 2012); *Jastremski v. Safeco Ins. Cos.*, 3:01-cv-7382, 2003 U.S. Dist. LEXIS 1327 at *21-22 (S.D. Ohio Jan. 31, 2003).

This case is no different. Carlone is not entitled to summary judgment. To the contrary, the undisputed facts and applicable law demonstrate that Progressive is entitled to judgment as a matter of law.

**B. <u>Carlone's Summary Judgment Motion Is Based On A Single Element Of The Administrative Exemption</u>.**

The Secretary of Labor has adopted regulations that require an individual to meet three criteria to be considered an exempt administrative employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . .
>
> (2) Whose primary duty is the performance of office or non-manual work **directly related to the management or general business operations of the employer or the employer's customers**; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a) (as summarized in *Talbert v. American Risk Ins. Co.*, No. 10-20355, 405 Fed. Appx. 848 at *8 (5th Cir. Dec. 20, 2010)) (emphasis added).[9]

Carlone concedes that he met the first prong. (Doc. 52, Carlone MSJ, p. 9, n. 6). He also abandons any argument that he can obtain summary judgment on the third prong – that his job duties required the exercise of discretion and independent judgment. (*Id.* at p. 21).

Thus, Carlone's summary judgment motion rests entirely on his unsupportable assertion that Progressive cannot demonstrate the second prong of the exemption. Relying on the "administrative/production dichotomy," Carlone argues that he was a non-exempt "production worker" who "produced" Progressive's claims department's "product" of resolving claims: "Plaintiff was a production worker who produced the product of the Claims Resolution Department – claims resolutions." (Doc. 52, Carlone MSJ, p. 12). Carlone asserts that he therefore did not perform work directly related to Progressive's management or general business operations. Carlone's contention is completely belied by undisputed facts and well-settled law.

### C. <u>Overwhelming Case Law And Department Of Labor Regulations Have Conclusively Rejected Carlone's Argument That Insurance Claims Adjusters Are Non-Exempt Production Workers Who Produce Their Employers' Product</u>.

Fatal to Carlone's argument that he was a non-exempt production worker because he "produced" Progressive's "product" of resolving claims is the fact that Progressive is not a claims resolution business. Progressive writes and sells insurance policies. Carlone did not perform either of those activities. (Cedeno Decl. ¶ 24). Indeed, in holding that a Progressive claims agent performed work that was directly related to Progressive's administrative operations and thus satisfied the second prong of the administrative exemption, the court in *Palacio v.*

[9] While Carlone has asserted claims under both the FLSA and the Connecticut Minimum Wage Act, Conn. Gen. Stat. § 31-58 *et seq* ("CMWA"), the parties agree that the CWMA substantially incorporates the FLSA's exemption coverage and the claims can therefore be analyzed jointly. (Doc. 52, Carlone MSJ, p. 7, n. 5); *Mertes v. Milardo Photography, Inc.*, No. PJRCV030101233S, 2003 Conn. Super. LEXIS 2580 (Conn. Super. Ct. Sept. 10, 2003); *compare* Reg. Conn. State Agencies § 31-60-15 *with* 29 C.F.R. § 541.200(a).

*Progressive Ins. Co.* cogently explained: "**Progressive is not in the business of handling claims. Rather, it is in the business of writing and selling automobile insurance. Claims handling occurs within a functional department as a type of ancillary customer service.**" *Id.*, 244 F. Supp. 2d at 1047 (emphasis added).

Numerous other courts also have rejected the very argument on which Carlone rests his summary judgment motion. Recognizing that insurance companies handle and adjust claims as part of their business of writing and selling insurance, courts overwhelmingly hold that this does not mean they are in the business of "resolving claims" for purposes of the administrative/production dichotomy. For example, in *Cheatham*, the Fifth Circuit held that Allstate insurance adjusters who investigated insurance coverage issues, conducted investigations to determine liability, and apportioned fault to parties in comparative negligence cases performed work "directly relate[d] to Allstate's management policies or general business operations, as distinguished from production." *Id.*, 465 F.3d at 585. The court also held that "[a]n insurance company's product is its policies, and Appellants' duties did not include writing and selling insurance." *Id.* Rather, "these duties are administrative in nature." *Id.*

The Ninth Circuit in *In re Farmers Ins. Exchange* reached the same conclusion. In that case, the defendant was a reciprocal or inter-insurance exchange providing insurance throughout the country. The defendant "perform[ed] all the functions of a typical insurance company, including selling policies, contracting with individual agents who sell and service policies, procuring reinsurance and adjusting claims made on its policies." *Id.*, 481 F.3d at 1124-25. The plaintiffs were claims adjusters who alleged that the defendant had improperly classified them as exempt administrative employees. The plaintiffs argued that the defendant could not meet the "directly related" requirement of the exemption because they were production workers since they

adjusted claims as part of the defendant's claims handling department. *Id.* at 1132. The Ninth Circuit rejected this argument and held they were exempt employees who fell on the administrative side of the dichotomy:

> **That FIE's adjusters represent the "claims handling arm of the Farmers Insurance Group of Companies," does not mean they fall on the production side of the "administrative/production worker dichotomy."** To place them there would elevate form -- corporate form, to be precise -- over substance. What matters is that, because they represent FIE to the public through their handling of claims and directly impact FIE's customer base, **the adjusters' work "affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business."**

*Id.* (internal citations omitted) (emphasis added).

In *Roe-Midgett*, 512 F.3d 865, 872-73 (7th Cir. 2008), the Seventh Circuit found that the plaintiff material damage appraisers who worked for an employer engaged in the business of processing insurance claims for insurance companies satisfied the "directly related test" of 29 C.F.R. § 541.200(a)(2). In rejecting the plaintiffs' argument that they were non-exempt production workers who produced their employer's product, the court held: "CCS's customers are insurance companies in the business of selling policies, and employees who process claims against those policies are performing an administrative function for CCS's customers (i.e., a task that administers the policies 'produced' by the insurers)." *Id.* at 872.

Likewise, in *Jastremski v. Safeco Ins. Cos.*, 3:01-cv-7382, 2003 U.S. Dist. LEXIS 1327 (S.D. Ohio Jan. 31, 2003), the plaintiff insurance adjuster alleged that he was misclassified as an exempt administrative employee by his employer Safeco Insurance Company. As part of his argument, the plaintiff alleged that because his job duties involved the adjusting and resolution of insurance claims and that his employer existed to produce settled claims, he was a non-exempt production employee. *Id.* at *26. The court rejected the plaintiff's argument and, relying in part on *Palacio*, held: "[P]laintiff's department was one of several departments in one large

insurance company. The vast majority of defendant's insurance policies did not result in claims in any given year. Additionally, to the extent that [a state California decision] suggests plaintiff was a production worker, I find that its limited persuasive authority is outweighed by *Palacio* and the Wage and Hour Division's letter, which provide ample support for my finding that plaintiff was an administrative employee." *Id.* at *27.

Recently, in *Withrow v. Sedgwick Claims Management Service, Inc.*, a district court again rejected the argument that Carlone seeks to advance in this case. In that case, the plaintiff handled and adjusted workers' compensation claims for a third-party administrator of such claims. The plaintiff argued that he was a non-exempt production worker because he generated the product his employer sold to its customers. *Id.*, 841 F. Supp. 2d at 979. In rejecting this argument, the court explained that the defendant's customer, the State of West Virginia, "provided workers' compensation insurance to claimants, and the plaintiffs administered these claims, rather than produced or sold the product." *Id.*

The Department of Labor's regulations also provide that employees engaged in adjusting insurance claims, and specifically Progressive claims adjusters, meet the directly related requirement and fall on the administrative side of the administrative/production dichotomy. Citing *Palacio*, the preamble to 29 C.F.R. § 541.203(a) provides that "<u>claims adjusters are not production employees because the insurance company is 'in the business of writing and selling automobile insurance,' rather than in the business of producing claims</u>." 69 Fed. Reg. Vol. 69, No. 79, 22122, 22144-45 (April 23, 2004) (citing *Palacio*) (emphasis added). Former 29 C.F.R. § 541.205(c)(5) – which the DOL has found to be consistent with current 29 C.F.R. § 541.203 – specifically provided that the "directly related" requirement is met by, among other persons, "claims agents and adjusters." *In re Farmers Ins. Exch.*, 481 F.3d at 1128; *see also* August 26,

2005 U.S. Department of Labor Wage and Hour Division letter; November 19, 2002 U.S. Department of Labor Wage and Hour Division letter.

Like the plaintiffs in the cases cited above, Carlone's argument that he was a non-exempt production worker because he produced the product of the Claims Resolution Department – claims resolutions – fails as a matter of law. Progressive is in the business of writing and selling insurance, not resolving insurance claims. *Palacio*, 244 F. Supp. 2d at 1047. If demonstrating misclassification were as simple as recasting a company's business based on the department in which the employee works, then attorneys in a company's law department could never be exempt because the law department provides legal services to the company. *See, e.g., Cheatham,* 465 F.3d at 585; *In re Farmers Ins. Exchange,* 481 F.3d at 1132; *Roe-Midgett,* 512 F.3d at 872-73.

Indeed, if Carlone's argument is taken to its logical conclusion, then all insurance "adjusters" who work for insurance companies in claims departments (or equivalent business units) would be non-exempt production workers under the FLSA regardless of the duties they performed. This is not the law as confirmed by more than fifty years of judicial decisions and Department of Labor opinions and regulations definitively holding that employees who work as insurance adjusters or in analogous positions are administratively exempt. *See In re Farmers Ins. Exch*, 481 F.3d at 1124 ("For more than 50 years, the Department of Labor has considered claims adjusters exempt from the Fair Labor Standard Act's overtime requirement . . . . Section 541.203 exempts claims adjusters if they perform activities such as interviewing witnesses, making recommendations regarding coverage and value of claims, determining fault and

negotiating settlements.").[10] Since Carlone's motion rests on a fundamentally incorrect assertion about the nature of Progressive's business that has been thoroughly and repeatedly rejected, it should be denied for this reason alone.

### D. **<u>Carlone's Primary Duty Was The Administratively Exempt Work Of Adjusting Insurance Claims By Making Coverage And Liability Decisions</u>.**

Carlone also cannot avoid the denial of his motion (as well as the dismissal of his claims) by suggesting that he falls on the production side of the administrative/production dichotomy based on duties he performed as a CGA. (Doc. 52, Carlone MSJ, p. 17, ¶ 1). Just the opposite is true. Undisputed facts show that Carlone performed claims adjusting work directly related to the management or general business operations of Progressive's business sufficient to satisfy the second prong of the administrative exemption. *See* 29 C.F.R. §§ 541.200(a)(2) and 541.203(a).

#### 1. **<u>The Actual Job Duties And Not Carlone's Statement That He Was Not A Claims Adjuster Control</u>.**

At the outset, in his motion papers, Carlone makes the statement that he was not a claims adjuster. That Carlone did not hold the title of "claims adjuster" or the mere fact that he states he was not a "claims adjuster" does not entitle him to judgment (nor preclude the entry of summary judgment on behalf of Progressive on its cross motion). An employee's job title is not determinative in a FLSA misclassification case. *See, e.g.,* 29 C.F.R. § 541.2. Rather, it is the job duties that determine whether the employee was properly classified an exempt. *Id.* ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's

---

[10] Indeed, over the last 50 years, the Department of Labor has issued over a dozen opinion letters recognizing that employees in claims adjuster roles are administratively exempt. This includes an April 29, 1996 letter to Progressive agreeing that Progressive claims representatives were properly designated as exempt employees after their training. For the Court's convenience, a copy of these opinion letters are attached to the Appendix at Tab F.

salary and duties meet the requirements of the regulations in this part."). In this case, Carlone performed claim adjusting duties that are administratively exempt as a matter of law.

2. **Carlone Was Not An "Investigator," But Rather Worked As A CGA And Was Responsible For Making Coverage And Liability Decisions.**

Carlone summarizes his work duties by claiming he was merely "an investigator" (Doc. 52, Carlone MSJ, p. 17, ¶ 1), but he was much more. Carlone was employed as a CGA during all relevant times. (Carlone Dep. at 16-17, 35, 53-54, Ex. 5, job description; Complaint at ¶ 7). CGAs are claims adjusters who focus on making insurance coverage and liability decisions. (Cedeno Decl. ¶ 22; *see also* Carlone's ClaimStation Diaries at Smith Decl. Ex. A, including Prog_001339, Prog_003408, Prog_003714). To work as a CGA, Carlone had to become licensed to adjust insurance claims. (Smith Dep. 150). As described below, Carlone performed "investigations" in the context of making coverage and liability decisions – not as a stand-alone job. (*See* Smith Decl. Ex. A).

3. **Carlone Did Not Just "Work Toward The Resolution Of Claims" – He Decided Claims.**

Carlone next alleges that he "worked toward the resolution of claims." (Doc. 52, Carlone MSJ, p. 17, ¶ 1). Carlone did far more than "work toward" the resolution of claims. If Carlone cleared the CVQs and confirmed the claim was covered by the policy (which was most of the time), that decision was final and there was coverage on the claim. (Carlone Dep. 74-75, 120-22, 181-84; *see also* Smith Decl. Ex. A, including Prog_001664; Prog_002183, Prog_003206). If Carlone determined that coverage existed for a claim, he was responsible for determining liability and comparative negligence. (Smith Dep. 233; Carlone Dep. 76-82, 85-86, 222-23, 249-51, Ex. 36; Doc. 52, Carlone MSJ p. 5; Smith Decl. Ex. A, Prog_001339, Prog_002031, Prog_003714). After Carlone made his liability decision, Progressive paid for damages or

injuries related to the claim up to the applicable policy limit. (Cedeno Decl. ¶ 35; Carlone Dep. 181-84). Carlone had authority to personally sign and authorize such payments up to $5,000 without any countersignature and could sign and authorize checks in excess of $5,000 as long as he received a second signature on the check. (Carlone Dep. 238-39). Thus, he did not just work toward resolution – he made the decisions that resulted in the resolution of the claim and in Progressive paying out over $800,000.

### 4. <u>Carlone Determined What Information Was Needed To Make His Coverage And Liability Decisions</u>.

Carlone was not a rote gatherer of information, mechanically obtaining police reports and witness statements as he implies. (Doc. 52, Carlone MSJ, p. 17, ¶ 1). Far from it, since each claim was different, depending on the circumstances involved, Carlone used his own judgment as to what information was necessary to make informed decisions. (*See* Smith Decl. Ex. A). For example, on a single claim, Carlone took statements from four witnesses, reviewed a police report, used Google Maps to determine the speed limit at the accident scene, analyzed skid marks to determine the likely outcome of the accident if one of the drivers had not been speeding, determined the relative duties of the parties to avoid the accident and applied this information and analysis to make a comparative negligence decision. (Smith Decl. Ex. A, Prog_001339). On another claim, Carlone made a liability decision based on witness statements, the damage to the vehicles, and an overhead view of the scene. (Smith Decl. Ex. A, Prog_003408). This independent decision making occurred on each claim Carlone adjusted. (*See, e.g.*, Smith Decl. Ex. A).

### 5. <u>Carlone Made Coverage Decisions And Recommendations</u>.

Carlone used the information he obtained during the course of his investigations to determine whether his assigned claims were covered by a Progressive insurance policy.

However, Carlone did more than "help" with these coverage decisions as he asserts. (Doc.52, Carlone MSJ, p. 17, ¶ 1). Again, if Carlone "cleared" the CVQs generated by ClaimStation, and thus confirmed the claim was covered (which was most of the time), that decision was final and there was coverage on the claim. (Carlone Dep. 74-75, 120-22, 181-84). As Carlone's ClaimStation entries verify:

- **10/06/2011 17:35:09 Resolved Coverage Issue Note:** LOSS OCCURRED WITHIN 10 DAYS OF POLICY INCEPTION . . . STATES IV COULD HAVE EXPERIENCED CONSIDERABLE RUST HAVING BEEN PARKED FOR SOME DAYS IN THE RAIN. **WILL ISSUE PAYMENT**.) (Smith Decl. Ex. A, Prog_003206).

- **REVIEWED COVGS: IN ORDER** (Smith Dec. Ex. A, Prog_001664).

Conversely, if Carlone was unable to clear a CVQ for an assigned claim and/or believed that the claim was not covered for some other reason, then Carlone would recommend that coverage for the claim be denied. As Carlone wrote in one such instance:

- **14:42:51 COVERAGE DENIAL** . . . HOW DID YOU VERIFY: . . . PR DOES CONFIRM THAT IV STRUCK DEER. **HOWEVER BASIS OF DENIAL IS THAT INSD LIKELY STRUCK THE DEER, THEN CALLED PROG TO ADD FULL COVERAGE, AND THEN CALLED THE POLICE**. (Smith Decl. Ex. A, Prog_002183; *see also* Cedeno Decl. ¶ 31).

### 6. <u>Carlone Did Not Just "Code Liability" – He Determined Liability</u>.

Carlone states in his motion that he "coded" liability, suggesting that he performed a data entry function by inputting liability decisions made by ClaimStation or someone else. (Doc. 52, Carlone MSJ p. 17, ¶¶ 1-2). Carlone did much more than that. As his own (and indisputably accurate) ClaimStation journal entries show, <u>Carlone made the liability decisions he entered</u> based on the results of his liability investigations.[11] (*See* Smith Decl. Ex. A, Carlone ClaimStation entries). For example:

[11] Carlone even acknowledged this in his summary judgment brief: "[b]ased on the facts that he has gathered, *he inserts his assessment of who is liable and to what extent.*" (Doc. 52, Carlone MSJ, p. 5).

- **15:25:39 LIABILITY DECISION COMPLETE**
  . . .
  ACCORDING TO THE SKID MARK CALCULATOR HAD THE CD BEEN TRAVELING 25MPH HE WOULD LIKELY HAVE BEEN ABLE TO STOP IN ABOUT 30 FEET AND THE ACCIDENT WOULD HAVE BEEN AVOIDED. ON THE OTHER HAND THE GREATER DUTY IS OWED BY OUR INSD BECAUSE SHE IS BACKING AND THE CD HAS POSESSION OF THE ROAD. THEREFORE THE MAJORITY RESPONSIBILITY FALLS TO THE ID. **I FIND THE ID 60% AT FAULT AND THE CD 40%.** (Smith Decl. Ex. A, Prog_001339) (emphasis added)

- **04/05/2012 12:55:42 LIABILITY DECISION COMPLETE.**
  . . .
  ALSO IV WAS PASSING ON THE LEFT AND CV WAS TURNING TO THE LEFT. WHY WASN'T CV PAYING CLOSER ATTENTION TO THE DIRECTION HE WAS GOING? ON THE OTHER HAND THE INSD WAS ILLEGALLY PASSING ON A ONE LANE ROAD. **FINDING BOTH PARTIES EQUALLY AT FAULT.** (Smith Decl. Ex. A, Prog_003714) (emphasis added).

- **11:50:15 LIABILITY DECISION COMPLETE**
  . . .
  IF THE POLICE HAD RESPONDED TO THE SCENE HE WOULD LIKELY HAVE RECEIVED A TICKET OR WARNING FOR CT 14-251 IMPROPER PARKING. AND PARKING PROPERLY WAS ESPECIALLY IMPORTANT ON THE DAY IN QUESTION BECAUSE THEIR WAS A MARKET FAIR GOING ON AND THE STREET WAS CROWDED WITH PARKED VEHICLES AND PEDESTRIANS. **FINDING 20% FAULT ON INSD.** (Smith Decl. Ex. A, Prog_002031) (emphasis added).

- **14:57:45 LIABILITY DECISION COMPLETE.**
  IF WE TAKE CD AT HER WORD THAT SHE SLAMMED ON HER BRAKES AS SHE CRESTED THE HILL THEN SHE SHOULD HAVE BEEN ABLE TO STOP IN TIME BEFORE COLLIDING WITH IV. INDEED SHE ALMOST MANAGED TO STOP BECAUSE THE DAMAGE TO HER VEHICLE IS LIMITED TO THE BUMPER COVER. AND THERE IS PLENTY OF ROOM FROM THE CREST TO THE DRIVEWAY TO STOP IF ONE IS TRAVELLING THE SPEED LIMIT. BUT THE FACT THAT SHE DIDN'T STOP IN TIME INDICATES SHE WAS SPEEDING (AS DOES HER OWN ESTIMATE THAT SHE WAS TRAVELLING AT 35MPH). **WILL FIND 20% COMP NEG ON CD.** (Smith Decl. Ex. A, Prog_003739-40).

### 7. Carlone Only "Assigned" Claims For Purposes Of Making A Determination As To The Amount Of Property Damage.

Carlone asserts that after he "coded" liability, he "assign[ed]" the claim to a claims adjuster, who then completed the claim. (Doc. 52, Carlone MSJ, p. 17, ¶ 1). This is simply untrue. Carlone was the claims adjuster. After Carlone confirmed coverage and made his liability decision, Progressive paid for damages or injuries related to the claim, up to the applicable policy limit. (Cedeno Decl. ¶ 35; Carlone Dep. 181-84). Because Carlone did not inspect vehicles for purposes of assessing the value of the property damage, after Carlone made

his liability decision, he "assigned" the claim to the appropriate damages estimator to make a damage assessment. (Carlone Dep. 87). After the estimator made his or her damage assessment, Carlone issued the reimbursement check all because of the coverage and liability decisions he made. (Carlone Dep. 181-83, 237-39). Thus, there was no assignment of claims adjuster duties.

**8. Carlone Was Responsible For Settling Claims And Made Credibility Decisions During The Course Of Determining Coverage And Liability.**

Carlone also states in his motion that he "does not have responsibility for settling claims" and that "[h]e does not make credibility determinations." (Doc. 52, Carlone MSJ, p. 7, ¶ 1). That contention is again belied by Carlone's own words in his ClaimStation diaries. Carlone's ClaimStation notes show that he did make credibility judgments. (*See, e.g.,* Smith Decl. Ex. A, p. Prog_003120) ("This makes CD's statement that the IV pulled out suddenly right in front of him **less credible**. If CD's statement was accurate the collision would have been closer to the intersection.") (emphasis added).

Moreover, in addition to authorizing payments on claims for which he determined coverage and liability (Carlone Dep. 238-39), Carlone's ClaimStation notes show that he negotiated with other insurance companies to reach agreements as to liability in order to avoid arbitration on this issue: "I M ON DIARY TO CALL OUT AGAIN TOMORROW IF THEY DON T RETURN MY CALL TODAY. **MY GOAL IS TO REACH AN UPFRONT AGREEMENT** WITH THEM SO AS TO AVOID ARBITRATION, WHICH WOULD DELAY THE DECISION BY 6-9 MONTHS." (Smith Decl. Ex. A, Prog_003713) (emphasis added).

**E. These Undisputed Facts Confirm That Carlone's Primary Duty Was The Performance Of Office Work Directly Related To Progressive's General Business Operations.**

The undisputed facts show that Carlone's primary duties were adjusting claims by making coverage and liability decisions. *Robinson-Smith*, 590 F.3d at 896 ("An administrative

employee's 'primary duty' does not consist of one specific task but rather of 'administrative duties' generally."); 29 C.F.R. § 541.700(a) ("[t]he term 'primary duty' means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."). Indeed, as demonstrated above, when the unsupported labels Carlone assigns to his duties are properly disregarded (such as "coding" liability and "worked toward" resolving claims), undisputed facts demonstrate that Carlone's work as a CGA consisted of making coverage decisions and recommendations, performing coverage and liability investigations, and making liability decisions based on his investigations. That these responsibilities were the most important duties Carlone performed for Progressive is further confirmed by the fact that Progressive paid over $800,000 as a direct result of Carlone's coverage and liability decisions. (Smith Decl. ¶ 9).

Carlone's primary duties as a CGA are directly related to the management or general business operations of Progressive's business sufficient to satisfy that prong of the administrative exemption. 29 C.F.R. § 541.203(a) specifically provides that insurance claims adjusters are exempt when they perform a variety of duties like those Carlone performed:

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties **include** activities such as **interviewing insureds, witnesses** and physicians; **inspecting property damage**; reviewing factual information to prepare damage estimates; **evaluating and making recommendations regarding coverage of claims; determining liability** and total value of a claim; **negotiating settlements**; and making recommendations regarding litigation. (emphasis added).

The Department of Labor also has promulgated a series of fact sheets and opinion letters expressly finding that insurance claims adjusters performing the same work Carlone performed for Progressive are administratively exempt. *See, e.g.,* U.S. Department of Labor Wage and

Hour Division Fact Sheet #17L "Insurance Claims Adjusters";[12] August 26, 2005 U.S. Department of Labor Wage and Hour Division letter; November 19, 2002 U.S. Department of Labor Wage and Hour Division letter (citing *Palacio*).[13]

Likewise, every circuit court that has recently considered the issue has found that the administrative exemption applies to employees who, like Carlone, resolved insurance claims. *See Robinson-Smith*, 590 F.3d at 897 ("In finding the *Roe-Midgett* adjusters exempt, the Seventh Circuit has joined every circuit that has recently considered the application of the administrative employee exemption to claims processing employees."). For instance, in *Cheatham*, 465 F.3d at 585, the Fifth Circuit found that Allstate insurance adjusters who investigated insurance coverage issues, conducted investigations to determine liability, and apportioned fault to parties in comparative negligence cases performed work "directly relate[d] to Allstate's management policies or general business operations, as distinguished from production."

The Ninth Circuit in *In re Farmers Ins. Exchange*, 481 F.3d at 1130-32, found that the plaintiff claims adjusters performed work directly related to the defendant insurance company's management policies/general operations, as opposed to non-exempt "production work," where they conducted investigations, made credibility determinations, determined liability and assigned fault to parties. Likewise, in *Talbert*, 405 Fed. Appx. at 854, the plaintiff assistant claims adjuster reviewed statements from insureds, handled claims where coverage was typically a foregone conclusion, and reviewed insurance policies. The court held that the plaintiff

---

[12] A copy of U.S. Department of Labor Wage and Hour Division Fact Sheet #17L is attached to the Appendix at Tab G.

[13] "[Courts] must give deference to the DOL's interpretation of its own regulations through, for example, Opinion Letters." *In re Farmers Ins. Exch.*, 481 F.3d at 1129; *see also Reich v. State of New York*, 3 F.3d 581, 588 (2d Cir. 1993); *Davis v. JP Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009).

performed work directly related to the general business operations of American Risk Insurance Company sufficient to satisfy the second prong of the administrative exemption test.

In *Roe-Midgett*, 512 F.3d at 873-74, the Seventh Circuit held that the plaintiff material damage appraisers who did not make coverage and liability decisions were still exempt since they evaluated and made recommendations on coverage, reviewed factual information to prepare damage estimates, and interviewed insureds and witnesses. *See also Jastremski*, 2003 U.S. Dist. LEXIS 1327 at *21-22 ("the regulations specifically provide that [the plaintiff insurance claims representative]'s job duties were directly related to management policies or general business operations."); *Withrow*, 841 F. Supp. 2d at 979 (same).

In *Ford*, the plaintiff was a former senior claims representative for Allstate Insurance. The plaintiff performed duties such as interviewing insureds, witnesses, and claimants, visiting accident scenes and inspecting property damage. 2005 Conn. Super. LEXIS at *6-8. The court found that the plaintiff's primary duty satisfied the Connecticut administrative exemption because he "performed office or non-manual work directly related to management policies or general business operations of Allstate or Allstate's customers." *Id.* at *7.

As in these cases, Carlone performed exempt duties directly related to Progressive's general business operations. He made decisions that determined whether a claim would be covered by a Progressive insurance policy. He conducted coverage and liability investigations in order to make liability and comparative negligence determinations, which involved interviewing Progressive insureds and witnesses, reviewing insurance policies, settling claims, making witness credibility decisions, and inspecting property damage in connection with making liability decisions. This is unquestionably exempt administrative work. *See, e.g.*, 29 C.F.R. § 541.203(a); *In re Farmers Ins. Exch.*, 481 F.3d at 1124, 1130-31; *Talbert*, 405 Fed. Appx. at

853; *Roe-Midgett*, 512 F.3d at 873-74; U.S. Department of Labor Fact Sheet #17L; *Palacio*, 244 F. Supp. 2d at 1046.[14] Accordingly, because Carlone's primary duties constituted exempt administrative work directly related to Progressive's general business operations, Carlone's duties fall within 29 C.F.R. § 541.200(a)(2), and his motion must be denied.

**F. <u>Carlone's Cited Legal Authorities Are Inapposite</u>.**

Faced with undisputed facts that align his CGA role directly with the administrative exemption, Carlone ignores the controlling regulation in 29 C.F.R. § 541.203(a) and the well-developed case law involving the insurance industry addressed above, and instead offers a misconstruction of federal regulations and inapposite case law in asserting that he was not administratively exempt. This effort goes nowhere.

First, in arguing that he was misclassified, Carlone curiously states that he did not perform any of the administrative duties provided in 29 C.F.R. § 541.201(b) – despite the fact that this regulation expressly identifies "**insurance**." Citing no authority in support, Carlone muses that "of course" this reference to insurance does not encompass "responding to a claim against a customer insured by Defendant." (Doc. 52, Carlone MSJ, p. 12, n 8). However, the court in *Withrow*, 841 F. Supp. 2d at 976, recently found that the reference to "insurance" in 29 C.F.R. § 541.201(b) does indeed include employees, such as Carlone, in claims adjuster roles. Moreover, Carlone entirely ignores 29 C.F.R. § 541.203(a), which provides that employees are administratively exempt when they perform the very duties that Carlone indisputably performed as a CGA.

---

[14] Carlone emphasizes that he did not work around vehicles or assess vehicle damage and wants this Court to conclude that he was therefore not an exempt employee. It is settled, however, that Carlone is not required to perform all the duties identified in 29 C.F.R. § 541.203(a) to fall within the administrative exemption. "The regulation [] does not require the adjuster to perform each and every activity listed" in order to be found exempt. *In re Farmers Ins. Exch.*, 481 F.3d at 1129; *Roe-Midgett*, 512 F.3d at 874; *Withrow*, 841 F. Supp. 2d at 984; Fact Sheet #17L (insurance claims adjusters generally exempt when their duties *include* activities such as interviewing insureds, witnesses, etc.).

Carlone also cannot salvage his case, much less seek summary judgment on his own behalf, by relying on inapplicable case law. Carlone alleges that the Second Circuit's decision in *Reich v. State of New York*, 3 F.3d 581 (2d Cir. 1993), controls the disposition of this case. Carlone could not be more incorrect. The plaintiffs in *Reich* were not claims adjusters, but rather members of the New York State Police assigned to the bureau of criminal investigation ("BCI"). The mission of the BCI and its officers, as set forth by New York Executive Law, was "preventing, investigating and detecting violations of criminal laws of the state, and conducting such other investigations as may be provided for by law." *Id.* at 585. The court found that the plaintiffs were non-exempt under the FLSA because the BCI was "in the law enforcement business" and "the primary function of the Investigators within that business is to conduct – or 'produce' – its criminal investigations." *Id.* at 587-88. That is not the case here. Unlike the plaintiff law enforcement officers in *Reich* who "produced" the BCI's business of performing criminal investigations, Progressive is in the business of writing and selling insurance policies, and Carlone did not perform those duties. Thus, Carlone never "produced" Progressive's product, making *Reich* inapplicable.

The same holds true for the other authorities on which Carlone relies. For instance, in *Gusdonovich v. Business Information Co.*, 705 F. Supp. 262 (W.D. Pa. 1987), the defendant employer was in the business of collecting information for insurance companies, businesses and individuals, and the plaintiff was employed as an "investigator" tasked with investigating and obtaining the information his employer collected and sold. *Id.* at 263. In finding that the plaintiff was a non-exempt production worker, the court explained: "BIC's business is 'producing' information for its clients, and the plaintiff's duties consisted almost entirely of gathering that 'product.'" *Id.* at 265.

Likewise, in *Reich v. American Int'l Adjustment Co.*, 902 F. Supp. 321 (D. Conn. 1994), the defendant employer was in the business of resolving automobile damage claims. *Id.* at 325. The plaintiffs were automobile damage appraisers who inspected damaged vehicles, determined what parts needed to be replaced or repaired, estimated the cost of the repairs, and negotiated with body shops over the cost of the repairs. *Id.* at 322. The court found that the plaintiffs performed the day-to-day activities of their employer's damages resolution business through their fact finding and damage evaluations. *Id.* at 325. Similarly, in *Davis v. JP Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009), the plaintiff worked for defendant Chase bank as an underwriter tasked with approving loans, and was classified by Chase as an exempt administrative employee. Applying the administrative/production dichotomy analysis, the court found that the plaintiff's duties "concern[ed] the 'production' of loans – the fundamental service provided by the bank." *Id.* at 534.[15] Thus, in each of these cases, the employee performed the service that was the very business of the company—a fact that is manifestly absent from this case.

The insurance industry case on which Carlone relies, *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606 (D. Conn. 2007), also has no application to this matter. The *Neary* plaintiff was "either an automobile damage appraiser or adjuster" during the relevant period. In denying the defendant's motion for summary judgment, the court found that the plaintiff did not

[15] Carlone also cites the California state court decisions of *Harris v. Liberty Mutual Ins. Co.*, 207 Cal. App. 4th 1225, 1244 (Cal. App. Ct, 2nd App. Dist., July 23, 2012) (de-published), and *Eicher v. Advanced Business Integrators, Inc.*, 151 Cal. App. 4th 1363 (2007), to argue that he produced Progressive's "product." Neither case applies here. On October 24, 2012, the California Supreme Court ordered the *Harris* opinion not to be published, rendering it of no precedential value. *Harris v. Liberty Mutual Ins. Co.*, Cal. Sup. Ct. Case No. S205097, 2012 Cal. LEXIS 10811 (Cal. Oct. 24, 2012); *see* California Rule of Court 8.1115(a) (opinions ordered not to be published "must not be cited or relied on by a court or a party in any other action."). Moreover, the *Harris* court did not involve the FLSA, was contrary to the Ninth Circuit's holding in *In re Farmers*, refused to consider DOL opinion letters and regulations (the Second Circuit heavily relies on such authority – *see Davis* and *Reich*), and summarily dismissed the overwhelming number of contrary federal cases as "non-binding" and "unpersuasive." The *Eicher* opinion is even less applicable, since it did not involve FLSA claims, insurance companies, or claims adjusters.

meet the "directly related" test because the only undisputed aspects of his job duties "included visually inspecting damaged automobiles, writing estimates, and reaching agreements with auto body shops regarding repair costs." *Id.* at 614-15. Carlone did not perform any such appraisal work. Moreover, in stark contrast to the plaintiff in *Neary*, it is undisputed that Carlone performed many of the very duties identified by the Department of Labor as constituting administratively except claims adjusting work.[16] Thus, Carlone's reliance on *Neary* only confirms that his motion should be denied.

Stated simply, Carlone has not offered a single citation that would warrant jettisoning the overwhelming authority holding that employees such as Carlone who resolve insurance claims by making coverage and liability decisions are administratively exempt. Because Carlone has not shown that he is entitled to summary judgment based on the only prong of the administrative exemption he challenges, his motion should be denied.

### G. Carlone Concedes He Is Unable To Establish The Other Prongs Of The Administrative Exemption As A Matter Of Law.

Carlone concedes he cannot obtain summary judgment based on the first prong (salary basis test) or the third prong (exercising discretion and independent judgment as to matters of significance) of the administrative exemption. 29 C.F.R. § 541.200(a); Doc. 52, Carlone MSJ. pp. 9, n. 6; 21. Indeed, Carlone provides no facts or discussion as to the third prong of the exemption, but rather baldly states that there is "an issue of fact" that he will address in his

[16] Indeed, the irrelevance of *Neary* to this case is further confirmed by the fact that *Neary* relied in part on the district court decision in *Robinson-Smith* to support its finding that the defendant did not establish the third prong of the administrative exemption. The Seventh Circuit subsequently reversed this decision and found that the plaintiff auto damage adjusters did qualify as an exempt administrative employees, thus undercutting *Neary*'s precedential value. *Robinson-Smith*, 590 F.3d at 893-94.

opposition to Progressive's Motion for Summary Judgment. (Doc. 52, Carlone MSJ, p. 21).[17] As set forth in Progressive's opening summary judgment memorandum, in performing the same administratively exempt duties identified in the DOL regulations, opinion letters and the applicable case law, Carlone exercised both discretion and independent judgment in adjusting and resolving his assigned claims. Therefore Progressive, not Carlone, is entitled to summary judgment.

## IV. CONCLUSION

Carlone's Motion for Summary Judgment should be denied. If anything, his own evidence confirms that summary judgment should be granted against him. Indeed, when the undisputed facts are applied to the overwhelming legal authority that applies to this case, there is no genuine issue that Carlone was properly classified as an exempt administrative employee under both the FLSA and the Connecticut Minimum Wage Act. Accordingly, Carlone's motion fails, and judgment should be entered on Progressive's cross motion for summary judgment as a matter of law.

[17] While Carlone essentially concedes he is unable to obtain summary judgment based on the third prong, he implies in his memorandum that he did not have sufficient discretion and judgment to satisfy the exemption by, for example, claiming that he was required to follow an automated process on ClaimStation. As discussed in Progressive's summary judgment papers, the fact that Carlone made some of his coverage decisions and recommendations by answering computer generated coverage questions did not eliminate Carlone's discretion and judgment. Rather, these coverage verification questions "are most accurately characterized as tools that channel rather than eliminate [plaintiff's] discretion." *Roe-Midgett*, 512 F.3d at 874-75; *see also Cheatham*, 465 F.3d at 585; *Talbert*, 405 Fed. Appx. at 853-54 (assistant claims adjuster exercised discretion and independent judgment in making coverage decisions even though coverage was typically a foregone conclusion); *Jastremski*, 2003 U.S. Dist. LEXIS at *36-39 (same).

Respectfully submitted,

*s/ Lori B. Alexander*

Lori Alexander- Fed. Bar No.: CT08970
LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street, Suite 300
New Haven, CT 06510
Telephone:(203) 974-8700
Facsimile:(203) 974-8799
Email: LAlexander@littler.com

Gregory V. Mersol (PHV-05436)
Stephen C. Sutton (PHV-05445)
BAKER & HOSTETLER LLP
PNC Center
1900 East Ninth Street, Suite 3200
Cleveland, OH 44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Email: gmersol@bakerlaw.com
ssutton@bakerlaw.com

Theresa M. Waugh
Federal Bar No.: CT23559
LITTLER MENDELSON, P.C.
111 N. Magnolia Avenue
Suite 1250
Orlando, FL 32801
Telephone: 407-393-2940
Facsimile: 407-641-9462
Email: twaugh@littler.com

Attorneys for Defendant Progressive Casualty Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2012, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ *Lori B. Alexander*
Lori Alexander- Fed. Bar No.: CT08970
LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street, Suite 300
New Haven, CT 06510
Telephone:(203) 974-8700
Facsimile:(203) 974-8799
LAlexander@littler.com