UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

Civil Action
No. 12-00207-WGY

* * * * * * * * * * * * * * * * * * * * * *

JOSEPH H. CARLONE, individually and on behalf of other similarly situated individuals,

Plaintiffs,

v.

PROGRESSIVE CASUALTY INSURANCE COMPANY,

Defendant.

* * * * * * * * * * * * * * * * * * * * * *

**MOTION HEARING**

BEFORE: The Honorable William G. Young, District Judge

APPEARANCES:

HAYBER LAW FIRM LLC (By Richard E. Hayber, Esq.), 221 Main Street, Suite 502, Hartford, Connecticut 06106, on behalf of the Plaintiffs

LITTLER MENDELSON, P.C. (By Lori B. Alexander, Esq.), One Century Tower, Suite 300, 265 Church Street, New Haven, Connecticut 06510
- and -
BAKER & HOSTETLER (By Gregory V. Mersol, Esq.), 3200 National City Center, 1900 East 9th Street, Cleveland, Ohio 44114-3485, on behalf of the Defendant

1 Courthouse Way
Boston, Massachusetts 02210

June 17, 2013

**THE CLERK:** Now hearing Civil Matter 12-207, Carlone v. Progressive Casualty.

**MR. HAYBER:** Good morning, your Honor. Attorney Richard Hayber for the plaintiff.

**MR. MERSOL:** Good morning, your Honor. Greg Mersol for the defendant, with my co-counsel, Lori Alexander.

**MS. ALEXANDER:** Good afternoon.

**THE COURT:** Well, good afternoon. Well, thank you for coming, but it wasn't necessary for you to come.

Let me try something out here. I know my clerk has, and I know you've rejected it, and I'm not trying to twist any arms here, but I want you to clearly understand what I offer.

I offer to treat this as a case stated. This is cross-motions for summary judgment. Now, if you'll treat it as a case stated, I'll take the record that I have now and if there are things that are not pinned down, I will simply draw reasonable inferences without respect to who's the moving party on either side. If you'll go for that then at least we will decide liability. Either there will be no liability and the case is over, plaintiff can appeal, or there will be liability and we'll move on to the next step in the litigation.

If you'll do that, I'll give you each a half an hour to argue, and since I'm changing the rules it doesn't

have to be today, unless you both agree that it can be today. There's utterly no pressure on you to agree to that. It's a procedural vehicle that I have found useful. And my mind, I will tell you my mind is completely open on the substance of the case.

If you don't agree to that, and you've told the clerk you don't, and that's fine, what we'll do is argue the cross-motions for summary judgment, ten minutes a side, but the downside risk is, because under Rule 56 I have to draw every inference against the moving parties, is that I'll find disputes, deny both motions, and the matter hasn't been advanced. Now, maybe you prefer that. And I am completely neutral on the point. I'm here to serve you.

So, with my explanation, is anyone interested in this case stated business?

**MR. MERSOL:** On behalf of the defendant, your Honor, we do appreciate the offer, but we respectfully decline.

**THE COURT:** That's fine. All right. Well, it takes two.

So, why don't we hear, we've got your motion, so why don't we hear from you.

**MR. MERSOL:** Thank you, your Honor.

This is a case in which we've got three luxuries that you don't often see, frankly, in lawsuits, period, but

certainly in Fair Labor Standards Act cases.

The first is that we've got the plaintiff's ClaimStation notes. This is his minute-by-minute diary of what he was doing at work. In a lot of cases there will be a dispute over what was he doing all day. We don't have that here. We have the ClaimStation diary notes which the plaintiff admits are an accurate reflection of what he does.

The second luxury we have is a decision from another district court that has already addressed the issue of Progressive's claims examiners, or claims adjusters, and that's the Palacio decision.

**THE COURT:** Right. But that doesn't bind him.

**MR. MERSOL:** It does not in terms of res judicata or collateral estoppel, but it is a district court that looked at these duties and --

**THE COURT:** These exact duties, and it's persuasive.

Now, you pay -- let's see if I understand. Your defense here is, if you will, that you -- let's see if I've got it right -- you pay in an irregular payment system. Is that right?

**MR. MERSOL:** Are you talking as payroll or are you talking about payment of claims?

**THE COURT:** No, payroll.

**MR. MERSOL:** Among other things he is paid a salary

as defined under the Fair Labor Standards Act, and that's not in dispute, Judge.

**THE COURT:** I guess I wanted to ask this. So your position is that he bears the full burden of proof here? I thought you invoked some exception here under which you had to prove that you were within that exception.

**MR. MERSOL:** No. As much as I would like that to be the law, Judge, the law is that the defendant needs to establish the requirements to establish administrative exemption under the Fair Labor Standards Act.

**THE COURT:** Thank you, and I appreciate the help.

And you invoke that administrative exemption so you bear the burden of bringing yourself within that exemption.

**MR. MERSOL:** Correct.

**THE COURT:** Thank you. Go ahead with your argument.

**MR. MERSOL:** And as to that, I think there's really only two things that are being disputed really on both motions. As to the plaintiff's motion, he asserts what is called a production dichotomy which is part of the applicable regulation under 29 CFR part 541.

The other thing he argues to a degree is that he did not exercise sufficient discretion and independent judgment. I don't believe that there are any other elements of the administrative exemption that are being disputed

here. So let's focus in on those, if we could.

Let me start with the production dichotomy piece. And this is one, yes, he looks at 541.201, but that's not the only regulation. The key regulation here is one on point, 541.203(a). And that is consistent with Department of Labor practice since, I think we found a case back in the 1940's, that insurance claims adjusters perform administratively exempt work even when they work for an insurance carrier. And every district court that has looked at this, or every circuit court that has looked at this issue has held that in fact insurance claims adjusters do not do production work, in fact, the business of their employer is to sell insurance.

The plaintiff cites a handful of cases involving people that are not insurance claims adjusters. These are people that are property estimators. Someone who goes out and looks at a car and says, gee, it would cost $1,300 to repair that fender. That's a non-exempt job. In fact, Mr. Carlone has moved out of the role in dispute here, I believe that's what he now does for Progressive and he does it at an hourly rate. We're not talking about those people.

And when you take those cases out of this there is no authority to support the fact that we should ignore 541.203(a), that in fact Progressive, as held in the Palacio case, and as reflected in all the other cases, is in the

business of selling insurance. An insurance claims adjuster is not, not someone who is doing production work.

I talked about the luxuries that we have in this case. We also have another one here as well, Judge. And that is actually the plaintiff's own Local Rule 56(a)(1) statement. And in paragraph 30 of that statement he writes that based on the facts he has gathered he makes an assessment of who was liable and to what extent. That is the core of claims adjusting.

The point you raised earlier, Judge, there's really two issues that apply in a Fair Labor Standards Act case involving classification. Number one, what did they do, which is often times something you have to look at the facts for, and then number two is how do we apply this regulation and the law to that. And in this particular case both jobs have almost been done for you already. In terms of what the plaintiff did, we've got the ClaimStation notes and we've got his binding admission contained in his Rule 56(a)(1) statement. Then you take that in one hand and in the other hand you pull up 541.203(a) and you're going to see the exact same verbs over and over and over again. Interviewing insurers, interviewing claimants.

**THE COURT:** So your position with respect to your motion, even though you bear the burden of proof, you say that the dispositive facts are all admitted by the

plaintiff.

**MR. MERSOL:** That's correct.

**THE COURT:** And a proper application of the law, you cite this host of cases, leads in your favor.

**MR. MERSOL:** That is correct.

**THE COURT:** I understand. What do you say?

**MR. HAYBER:** Thank you, your Honor.

There are three points that I want to make sure I make with my ten minutes, your Honor. The first is that Mr. Carlone is not an administrative employee. The second is that he is a production worker. And those two points, your Honor, in the Second Circuit and certainly in the District of Connecticut are two sides of the same coin. I can't emphasize this enough, your Honor. Second Circuit law, Wright v. State of New York, Davis v. J.P. Morgan, tells district judges this is how you do an administrative exemption case. You ask what is the product of this company, who produces it, does the work relate to it, if so, this person's not an administrative employee.

Having said that, and I'm happy --

**THE COURT:** But I haven't heard, I haven't heard any factual dispute yet. What's the factual --

**MR. HAYBER:** Sure.

**THE COURT:** Is there any?

**MR. HAYBER:** Sure. The third point that I wanted

to make sure that I talked about was that Mr. Carlone is not an insurance claims adjuster. They call him that in their briefs. They don't call him that on his job. They tried in their briefs to pin a label on him that is an old pre-reorganization Progressive label. His title is file owner. This is about as clerical a position as you can get in a claims department. An insurance claims adjuster, contrary -- this is where I disagree with attorney Mersol. The essence of an insurance claims adjuster is not making a liability determination. It is settling claims. We've provided you in our briefs with the definition of an insurance claims adjuster in the state of Connecticut.

**THE COURT:** No, no, help me out.

**MR. HAYBER:** Yes, sir.

**THE COURT:** His minute-by-minute what he does, that's admitted by you. I mean, that is what he does.

**MR. HAYBER:** There are excerpts from his ClaimStation notes which in some ways aren't dispositive because they don't tell you, for example, decisions that are put in there after he goes and speaks to his supervisor who makes the decision. But the, but the essence of what he does I think is not disputed in that he does not evaluate the value of a claim, he does not negotiate a claim, and he does not settle the claim. That is undisputed. He does not do those things. And those are the essence of an insurance

claims adjuster. And that tells you, your Honor, that this regulation that attorney Mersol wants you to focus on is inapplicable to this case and does not control it. What controls this case is the administrative exemption itself and Second Circuit law. And here's how you do it in the Second Circuit. And these are two sides of the same coin.

Much is written in other circuits and in articles about this production worker dichotomy and that it is not useful in a white color world, it was useful really in a manufacturing world, and it's overstated. Well, in the Second Circuit we use it. And Judge Janet Hall used it last week. And it's a supplemental authority that I supplied, and her analysis tracks the Second Circuit. And I don't believe that asking whether or not someone's a production worker is some unique argument that you should or should not do. I believe it is the flip side of the same coin.

**THE COURT:** But aren't you, aren't you riding two horses here?

**MR. HAYBER:** No, your Honor.

**THE COURT:** Well, here's my problem. When I say what's disputed you say, well, we admit those notes, those are admissions.

**MR. HAYBER:** Well --

**THE COURT:** But they're excerpts and they're not complete.

**MR. HAYBER:** Yes.

**THE COURT:** When, when I take the complete file, if it's supplied to me, he will not fall into this administrative exemption. That's what you say.

**MR. HAYBER:** That's what I say.

**THE COURT:** They dispute that.

**MR. HAYBER:** So, so --

**THE COURT:** But they dispute that factually.

**MR. HAYBER:** Well, but they don't really. And let me speak to that directly.

If you look at page 9 of my October 26th memorandum of law in support of our motion -- I'll wait until you get there.

**THE COURT:** Go ahead.

**MR. HAYBER:** This is the regulation that the Department of Labor wrote that said these are administrative tasks. And it lists them. Okay? Tax, finance, accounting, budgeting, auditing, insurance -- and by the way not the insurance of an insurance company, the type of insurance that every company has to have -- quality control, purchasing, procurement, and on and on and on, or similar duties. Administrative work is work as is described in the, kind of earlier regulation that is related to the general business operations of the company, and this means work that is done at every company that is in business.

**THE COURT:** Let me ask you this. Suppose I limited my determination to the, the excerpts that I have, suppose I limited it to the admissions that your client has made. Will you rest on that? Because that's all, that's all -- they're saying that on those admissions we win.

**MR. HAYBER:** And --

**THE COURT:** And if I'm following you, you say on those admissions, which are undisputed, you win.

**MR. HAYBER:** I win. And here's why. The --

**THE COURT:** Well, I'm less interested in the why than if I've got it all. If I've got it all somebody's going to win. I don't need --

**MR. HAYBER:** So if I --

**THE COURT:** -- case stateds or anything.

**MR. HAYBER:** I believe you have it all on half the case, and I will explain what that means.

**THE COURT:** Well, on the liability part of the case?

**MR. HAYBER:** No, your Honor, half the liability part. And here's what I mean by that.

The administrative exemption asks two questions. Is this work administrative in nature, meaning does it relate to the general business operations of the company, and the defendant bears the burden on both of these prongs.

**THE COURT:** Yes, he admits that.

**MR. HAYBER:** They have to clear both hurdles.

**THE COURT:** He admits that.

**MR. HAYBER:** The second prong is that his work includes the exercise of discretion and independent judgment on matters of significance. I don't believe you have it all on this record, which is why I haven't moved for summary judgment as to the second prong. I believe that the only thing that's clear in this case is the nature of his work. It is not administrative in nature. So I don't believe --

**THE COURT:** And what more do I need, what more do I need with respect to ascertaining whether it involves the exercise of discretion and judgment?

**MR. HAYBER:** Well, I just, I just acknowledge that the records that both sides have produced have conflicting descriptions of how he does his work, and so I believe that's a matter for a jury.

**THE COURT:** A genuine issue of material fact.

**MR. HAYBER:** That's what I believe, which is why I didn't move for summary judgment on the second prong.

**THE COURT:** Yes.

**MR. HAYBER:** But here's the point I really would like to make. The defense hasn't even argued, tried to argue that one of these types of administrative tasks that I'm pointing to on page 9 of my brief, they haven't even tried to argue that he does any of them. It is their

burden. The best they do, the best they do at these plain and simple and basic and fundamental regulations is on page 20 of their October 26th memorandum of law, and they say Carlone's primary duties as a Claims Generalist Associate, which is the old title, in servicing Progressive's business.

This is an interesting phrase. Lots of the administrative exemption jurisprudence, in the Second Circuit, in the District of Connecticut and all around the country, talk about this phrase servicing the business. And here's what that means. And it doesn't mean what Joseph Carlone does. What it means is there's some type of an internal client for this person.

Let's go to the very first one on the list. Tax. The accountants at Progressive service the business. Their work doesn't relate to the client. Their work isn't for the client. They're not doing tax returns.

**THE COURT:** I understand that.

**MR. HAYBER:** Mr. Carlone's work is for the client. He doesn't have an internal client. He doesn't service Progressive's business. Information technology. There's an information technology department.

**THE COURT:** All right, I think I understand --

**MR. HAYBER:** Okay.

**THE COURT:** -- the argument.

**MR. HAYBER:** And they haven't even attempted to fit his job into these categories.

**THE COURT:** What do you say about the host of cases that your brother --

**MR. HAYBER:** Sure. Thank you for bringing that up.

Number one, those are adjuster cases. Almost all of them. They are claims adjuster cases. They are people who do what the people do after Mr. Carlone finishes his really quasi-paralegal work in getting the police report and making some preliminary nonbinding liability determination and he hands it off to what's called a complexity rep, which is really the true adjuster, the person who litigates, who talks to the lawyers, who negotiates the case and settles the case. So, he is simply not a claims adjuster.

The other line of cases that attorney Mersol just mentioned, and Neary is one that I handled actually in the District of Connecticut, it's Judge Janet Arterton, Neary was a physical damage appraiser. So he didn't do the bodily injury part of it. He would go out and look at the car. And Metropolitan had classified them as exempt adjusters. Well, I won that case. Judge, Judge Arterton said no, they're not exempt adjusters because the exemption just didn't apply. But Mr. Carlone doesn't even do what those people did.

**THE COURT:** How did you win that case absent a

jury?

**MR. HAYBER:** Oh, when I say I won, I mean I defeated the defendant's motion for summary judgment.

**THE COURT:** Yes.

**MR. HAYBER:** And that's the published opinion that I --

**THE COURT:** Thank you. I understand.

What do you say to the second prong that he asserts here, that even if I were to classify him, and of course he denies that he should be, but even if I were to classify him as an administrative employee there's, there's disputes here about whether he exercises discretion and judgment.

**MR. MERSOL:** The answer is that the disputes are neither genuine nor material. And again let me go back to start with the ClaimStation notes and those all reflect that he's making multiple claim determinations each day. He admitted that he is making claims assessments. And these are --

**THE COURT:** Well, he's the second, he's the second chair. He has to go to this fellow with a different title.

**MR. MERSOL:** That's in our case a woman but --

**THE COURT:** She. I have no --

**MR. MERSOL:** But hold on. It's undisputed that fewer than one percent of those claims go up to a supervisor. And when Mr. Carlone was asked what happens --

because keep in mind he doesn't have to make the decision, all we have to do is to give his decision particular weight. That's the language of the regulations. And when he was asked specifically what happens when he went to his supervisor with those recommendations, his response, would she accept his recommendation, on pages 82 and 83 of his deposition he says: I would definitely say most of the time.

So, there is no genuine material fact here. He's making these credibility determinations. He's making liability assessments. They're reviewed less than one percent of the time. By the way, mostly after the fact. His recommendations are being taken by his own admission definitely most of the time. All of these things establish the administrative exemption as a matter of law.

**THE COURT:** Well, respectfully I disagree. Where you bear the burden of proof and I have to draw all inferences against you, I cannot reach that conclusion. The motion, your motion for summary judgment is denied; the plaintiff's motion for partial summary judgment is likewise denied.

Now, this purports to be a class action. Where do we stand on this? When is this case going to trial?

**MR. HAYBER:** Well, that's a good question, your Honor. Ordinarily -- I pleaded it as a collective action.

Under the Fair Labor Standards Act --

**THE COURT:** I've done them.

**MR. HAYBER:** Okay. And, boy, I don't even recall right now how we got to this point. But decisions were made between the parties that we would tee up summary judgment first. And ordinarily plaintiffs' lawyers don't like to do that for various reasons but --

**THE COURT:** Well, that's -- all right.

**MR. HAYBER:** -- we did. And so now we're past them.

My next goal would be to file my motion for conditional certification. So I'll probably have to conduct some additional discovery to support it, then get that motion on file. I'll talk to attorney Mersol about his client's consent to it because I believe certain things have been said in these papers that suggest that all these file owners are the same, at least sufficient for notice. Motion to go out. There are thousands of these people around the country. They'll get notice. A percentage of them will join. Then there will doubtless need to be discovery with regard to the class that joined. If a few hundred people join, attorney Mersol and his team will no doubt want to take depositions of many of them.

**THE COURT:** No, no, I've done -- so, I propose now to save you time and schedule these things out.

Suppose we put this to trial -- well, you know, I'm not --

(Whereupon the Court and the Clerk conferred.)

**THE COURT:** Yes. Oh, the clerk reminds me, we set trial for June 2014.

**MR. HAYBER:** Oh.

**THE COURT:** And we're going to stick with that.

**MR. HAYBER:** We might make it. We would have to do a lot of work very fast.

**THE COURT:** Well, I expect it to be done very fast. You asked for this --

**MR. HAYBER:** Yes, your Honor.

**THE COURT:** -- to be a class action.

I'm wondering really -- don't take any particular comfort that I denied the motions for summary judgment. I'm wondering if it might not make sense to try Mr. Carlone's case as an exemplar case before a jury, or a judge if you wanted to waive a jury, try that out. If he wins we won't enter judgment because of this collateral estoppel business, but that will certainly instruct us as to what class actions, what, what are common issues here with respect to these, quote, file owners, and to go from there.

On the other hand, if he loses it, well, he's not an adequate class representative, and while that doesn't stop the possibility of someone else coming forward it

certainly slows it down.

Let's ask, let's ask Progressive. What do you think about that?

**MR. MERSOL:** Judge, that actually was what we were going to propose should we have gotten a denial of summary judgment. And part of it I think comes down to, as you've already seen here, is the ClaimStation notes and how they're characterized. It's going to be hard enough with one guy, why would we multiply the problem. Let's try his one case and then we'll find out what kind of proof is needed, we'll know for a fact what it is, and again, as you point out, it may be the end of the case, it may be a stepping stone to something else.

**THE COURT:** Let me, let me say this -- well, all right, I like that. And I don't -- what if we were to do this. What if we were to set his case down -- will you go jury waived with him?

**MR. HAYBER:** I'm sorry, your Honor, I would have to take some time to think about that and talk to my team and talk to my client.

**THE COURT:** I understand. Whether you will or not, I like that approach. Because I will set down, in short time, I'm thinking September, October at the latest, a trial. It will be for all intents and purposes a trial. If you'll go jury waived -- but there's no pressure on you to

go jury waived.

**MR. HAYBER:** In front of Judge Hall?

**THE COURT:** No, no. It's my case now. I can't bounce it back and forth. It's in front of me.

**MR. HAYBER:** I thought these cases were going back to Connecticut.

**THE COURT:** Oh, they are to the extent there's a jury. But to the extent as to whether there's a class that's before me, that's jury waived. So, I propose to conduct this proceeding to learn whether there are common things, you say, well, that they call these people file owners, and to actually find out what we're talking about here.

Now, no one says he has to give up his jury trial right. But based upon such a trial, I could find that he was an adequate representative. I could find that he was not an adequate representative. I could find that, you know, that there are things unique as to him.

I've made my rulings as to law. Yes, you're by summary judgment as to this. There are disputes. But if I teed up next the class aspects of this, before we sent out notice to these thousands of people, it would seem to be, that would be appropriate judicial management.

What's the matter with that?

**MR. HAYBER:** I would need to think about that.

I've never heard of that being done. I think there are problems on both sides of this. For example, if we win this would prejudice the defense because now a notice would go out to 3,000 people on a case that had been successful and participation rates will be higher than if the case were simply pending in a dispute.

**THE COURT:** Well, he's successful because I would enter my findings with respect to class, yes.

**MR. HAYBER:** If we lose, it is always the defendant's position, and it has been their position in this case, that Mr. Carlone is not similarly situated to the rest of the class and therefore --

**THE COURT:** And he --

**MR. HAYBER:** -- and therefore a ruling against him will have no effect on the rest of the class at all. The reason --

**THE COURT:** That's true, but I will know a lot more about whether this is amenable to class treatment.

**MR. HAYBER:** Well, the first motion that we contemplate here is really not, it's not a class action, it's a collective action, and the motion simply alerts the class that there's a case pending in which they are at least preliminarily similarly situated. Adequacy, which is a term you've used a couple of times, is not a part of that. The law just simply wants us to let the class, the collective

know that a case is pending and they have a champion, that's Second Circuit jurisprudence, they say you have a champion, Mr. Carlone, and that they can join if they want. And it would be my goal to get that notice out at this point.

I really did quite a moderate thing by agreeing to tee up summary judgment first. Most plaintiffs' lawyers don't agree to that.

**THE COURT:** With all respect, I deal with what's before me.

All right, I'm listening to you. But it seems to me I want to, whether you call it a collective or a class, under the appropriate rubric, I propose to hear that.

How about hearing that in September, as to him?

**MR. HAYBER:** Yes. I can say now probably we won't agree to waive our right to a jury trial.

**THE COURT:** Oh, heavens no. I'm not -- there's not the least inkling about waiving a jury.

**MR. HAYBER:** Well, in which case I'll be in front of Judge Hall in a jury trial.

**THE COURT:** No, you're not before Judge -- you won't go back before Judge Hall until you're through with me.

**MR. HAYBER:** Well, what will the hearing be about?

**THE COURT:** The hearing will be about whether I'm going to allow it to proceed as a collective action. And

I'll want evidence. I'll want to know exactly what he's doing.

**MR. HAYBER:** So the issue litigated in September --

**THE COURT:** Right.

**MR. HAYBER:** -- will be my motion for conditional certification of the class?

**THE COURT:** You can put out your notice, your alert prior to that. But then I have to actually certify a class, don't I?

**MR. HAYBER:** So the first step is to simply -- my motion will first ask you to rule that there's a group out there called file owners, and we know there's several thousand of them, who are similarly situated at a very preliminary level.

**THE COURT:** I'm likely to do that subject to his opposition. And I don't propose to have lots of hearings on that.

**MR. HAYBER:** The typical next step is that discovery occurs with regard to that class.

**THE COURT:** Yes.

**MR. HAYBER:** Are you proposing that we then skip discovery as to the class?

**THE COURT:** I'm proposing to get to the merits of his claim.

**MR. HAYBER:** Merits meaning judgment?

**THE COURT:** Not judgment, but merits meaning evidence. I dealt with this as matter of law on your arguments. You have genuine disputes of material fact. They dispute that, but that's my ruling. I'm content with that. My ruling is that there are genuine issues of material fact.

**MR. HAYBER:** On liability.

**THE COURT:** On liability.

Now, what I'm very unclear on is whether, without addressing this under the rubric of Rule 56, where I have to draw all inferences against the moving party, and I've done that, I don't have to do that on deciding a conditional certification of classes or class certification. As to that, indeed I am instructed by the Supreme Court to hold rigorous hearings. I propose to hold that rigorous hearing and find out what we're really talking about here.

**MR. HAYBER:** Well, your Honor, it can't be rigorous unless we've done some discovery as to the class.

**THE COURT:** I'm not saying -- well, fine, I'm talking September or October. That's not tomorrow.

**MR. HAYBER:** I don't think we can get the class opted in by then.

**THE COURT:** I'm not proposing to decide the rights of the entire class. That's June of next year.

**MR. HAYBER:** I'm just confused about what I'll be

litigating in September. If it's not judgment and it's not --

**THE COURT:** You'll be litigating -- here at least is how I conceive it. Maybe I'm wrong, but here's how I conceive it.

I'll be litigating the merits of Mr. Carlone's claim. That's all.

**MR. HAYBER:** That's, that's trial.

**THE COURT:** As to his claim, yes.

**MR. HAYBER:** But I want him to have that right in front a jury in Connecticut.

**THE COURT:** And if I -- I can't do away with that right, nor do I propose. Suppose everything goes against him. Suppose I don't think he's an adequate representative, suppose I don't think he's got a claim here at all, suppose I think these regulations say that in fact he is this administrative person. I'll write all that up. All right? Based upon an evidentiary record. Now, he hasn't lost. But if I think that, he hasn't lost in front of the jury. But if I think that, on evidence, the case is not likely to go anywhere because they'll be able to say that there is not a basis for having -- he can then have his trial before Judge Hall. He can have his trial.

**MR. HAYBER:** I just, I just don't --

**THE COURT:** Because I'm only deciding class aspects

of it.

**MR. HAYBER:** I just have never heard of anything like this and I don't know what to think about it. So, I'll -- if there's some kind of writing that I can read.

**THE COURT:** Yes, I don't -- you know, that's a very fair response.

**MR. HAYBER:** Okay. Thank you.

**THE COURT:** In the sense that what I'm going to do is schedule it. But once you've had a chance to think about it you can ask me to change that.

Now, let me, since -- you understand what I'm thinking about?

**MR. MERSOL:** I believe, Judge. And actually one of the issues that we often get particularly in collective actions is all these things we're talking about are really tools created by district courts to manage it based on section 16(b) of the FLSA which says almost nothing on these issues. So, it strikes me that what you're doing is you're exercising your judicial power to manage the case, and in that light it makes sense.

**THE COURT:** That's what I think I'm doing. But since I'm acting in a fashion that at least one counsel finds surprising, I don't think it's graven in stone.

So, here's the order. The case is on for full trial in June of 2014. I will send it back to Connecticut

for a full trial then.

In October, not September, it's on my running trial list in October for an evidentiary hearing on class matters. I intend -- you don't have to come to Massachusetts. It will be jury waived. But you're welcome to come to Massachusetts as you have and the witness is here, but that's an added expense to you, you don't have to do that. We'll -- the witnesses can be in Connecticut and I will hear evidence on the class issues in this case and I will make the appropriate findings, because those are findings, and rulings only as to the class matters. Then we'll see where we stand after I've done that in October.

That does not preclude the plaintiff now from seeking this conditional notification that you mentioned. I'm not ruling on it. I'll want to see your motion and see their response.

**MR. HAYBER:** May I ask a question?

**THE COURT:** Yes.

**MR. HAYBER:** When you say class issues will you write something for us as to what you think those issues are so that I will know exactly what I'm litigating in October?

**THE COURT:** Sometime before October probably.

**MR. HAYBER:** Okay. Because right now I can't imagine what those issues would be.

**THE COURT:** Well, I can. The issues of the

liability as to Mr. Carlone as an exemplar of the class.

**MR. HAYBER:** But that's not an issue in this case.

**THE COURT:** Yes, it is.

**MR. HAYBER:** So, the issues in this case as I pleaded it is that under the collective action mechanism he is at a rudimentary level similar to other file owners around the country and they should get notice.

**THE COURT:** I'm accepting that as we sit here.

**MR. HAYBER:** Right.

**THE COURT:** But I'll want to see your motion and see their opposition.

**MR. HAYBER:** Right. Later, attorney Mersol and his team will likely file a motion to decertify the class which addresses the same issue but at a higher standard. Not quite as high as class action certification.

**THE COURT:** Right.

**MR. HAYBER:** Judge Thompson recently ruled in a case in Connecticut that I was involved in on what that standard means, similar based upon some evidence that we've learned from the class.

**THE COURT:** Right.

**MR. HAYBER:** So how, what I'm confused about is how we can -- I'm imagining what you're saying to me now is we're going to litigate his decert motion in October, but how can we do that unless we've done some discovery of the

class.

**THE COURT:** Nothing I've said precludes discovery.

**MR. HAYBER:** Okay.

**THE COURT:** But I'm not sure it's that motion. My focus will be on this man, Mr. Carlone.

**MR. HAYBER:** But that's not a class issue.

**THE COURT:** Well, I can conceive that it is because he must be an adequate representative.

**MR. HAYBER:** Adequacy of representation is not an issue in this case.

**THE COURT:** I hear you, I hear you, but you better brief that for me.

I'll state it another way. I want to litigate it so that I have a better feel in the representations that have been made to me this afternoon about whether as a mixed question of fact and law they fit within the administrative exemption. That's what I want to hold a hearing on, whether as a mixed question of fact and law they fit, he fits, this man, your client, fits within the administrative exemption.

**MR. HAYBER:** And if you conclude that --

**THE COURT:** They say he does. You say he does not.

**MR. HAYBER:** And if you agree with us what ruling comes out of that hearing?

**THE COURT:** If I agree with you, I am probably much more amenable to the collective action for all of those who

opt in, if I'm satisfied that file owners operate the way he operates.

**MR. HAYBER:** So, forgive me for saying this, but I believe this is exactly what --

**THE COURT:** Don't ever ask for forgiveness.

**MR. HAYBER:** All right.

**THE COURT:** I'm just stumbling along.

**MR. HAYBER:** As I now understand it, what you are proposing you do is decide whether the class gets notice based upon what you think of the merits. This is exactly what you should not do.

**THE COURT:** Oh, I hear that. I've heard that before. With respect to the conditional, I'm not -- with respect to your initial notice, I hear what you say. You'll have to brief it. I think it makes some, some sense.

**MR. HAYBER:** I don't think we can brief it, the two teams, and conduct the discovery that we need to brief it in time, to then conduct discovery of the opt-in class, and then have a decert motion from attorney Mersol and then have this hearing. I think it's never going to happen. I mean, it's already June --

**THE COURT:** I've just scheduled it and you'll have to convince me of that.

**MR. HAYBER:** Okay.

**THE COURT:** That's how we're proceeding. Thank

you.

**MR. HAYBER:** Thank you.

**THE COURT:** This has been helpful, and I appreciate it. All right.

**MR. HAYBER:** Thank you, your Honor.

**THE COURT:** That's the order. We'll recess.

**THE CLERK:** All rise.

(Whereupon the matter concluded.)

**C E R T I F I C A T E**

I, Donald E. Womack, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/S/ DONALD E. WOMACK 6-20-2013

______________________________

DONALD E. WOMACK
Official Court Reporter
P.O. Box 51062
Boston, Massachusetts 02205-1062
womack@megatran.com