**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Joseph H. Carlone, individually and on behalf of other similarly situated individuals, | ) | CIVIL ACTION NO.: 3:12-cv-00207(WGY) |
| Plaintiffs, | ) | |
| v. | ) | August 23, 2013 |
| Progressive Casualty Insurance Company, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF JOSEPH CARLONE'S MOTION FOR NOTICE TO BE ISSUED PURSUANT TO 29 U.S.C. § 216(b)**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

A. Overview Of Progressive's Claims Department And CGA Position ..... 2

B. Job Expectations For CGAs At Progressive's Newington, Connecticut Facility At Which Carlone Was Employed ..... 3

C. Carlone's Employment History With Progressive ..... 5

D. The Work Carlone Allegedly Performed As A CGA Is Entirely Different From Ms. Cedeno's Expectations For The Position And What Is Described In The CGA Job Description ..... 5

E. Carlone's Alleged Duties Are Markedly Different From That Of Other Connecticut CGAs ..... 6

III. OMISSIONS AND INACCURACIES IN CARLONE'S STATEMENT OF FACTS ..... 8

A. In Addition To The Individualized Differences In How He Performed His Job, Carlone Has Not Identified A Single Uniform Policy That Applies To All Progressive CGAs ..... 9

B. Carlone Has Presented No Evidence To Support His Blanket Assertion That CGAs Share Common Duties ..... 12

C. Despite The Fact That This Case Has Been Pending Since February 2012, No Other CGA Has Joined ..... 13

IV. LAW AND ARGUMENT ..... 14

A. Carlone Must Prove That He And The Putative Class Members Were All Subject To A Uniform Policy Or Plan That Violated The FLSA ..... 14

B. Courts In This Circuit And Others Have Routinely Denied Conditional Certification When Presented With The Type Of Insufficient "Evidence" That Carlone Proffers ..... 15

C. Carlone's Request For Conditional Certification Fails Because He Has Not Shown That He Is Similarly Situated To Other CGAs ..... 21

1. Carlone Has Failed To Show That He And The CGAs He Seeks To Represent Were Subject To A Common Policy Or Plan ..... 21

2. Conditional Certification Also Should Be Denied Because Carlone Has Not Shown Any Other CGA Primarily Performed Non-Exempt Duties ....24

D. The Lack Of Opt-In Plaintiffs Also Weighs Against Certification ....27

E. Carlone's Cited Legal Authorities Are Inapposite ....28

F. Carlone Has Not Met His Burden To Justify Notice To A Nationwide Class ....29

G. Because Carlone's Motion For Conditional Certification Should Be Denied, His Overreaching Requests For Equitable Tolling Of The Statute Of Limitations And Inappropriate Notice Content Are Irrelevant And Need Not Be Considered ....30

1. Equitable Tolling of the Statute of Limitations Is Not Appropriate In This Case ....30

2. Carlone Has Proposed An Inappropriate And Overreaching Notice And Proposed Opt-In Form ....33

a. Use of the term "File Owners" is confusing and inaccurate ....34

b. There is no evidence that Progressive violated the FLSA, let alone evidence that Progressive "willfully" violated the FLSA to justify a 3-year statute of limitations ....34

c. The rights and obligations of opt-in plaintiffs is omitted ....34

d. The Notice could be read to infer that the Court endorses Carlone's claims on the merits ....36

e. Consent forms are properly sent to the Courts – not plaintiffs' counsel ....36

f. Carlone's requested dissemination of his proposed Notice via e-mail and workplace postings is unduly broad and unnecessary ....37

g. Carlone's proposed notice does not adequately protect the privacy interests of potential opt-in plaintiffs ....37

h. Reminder postcards are unnecessary and could be interpreted as encouragement to join the lawsuit ....38

V. CONCLUSION ....39

# TABLE OF AUTHORITIES

Page(s)

## CASES


*Adeel Tahir v. Avis Budget Group, Inc.*,
2011 U.S. Dist. LEXIS 37279 (D.N.J. Apr. 6, 2011) ....26

*Ali v. New York City Health & Hosps. Corp.*,
2013 U.S. Dist. LEXIS 44091 (S.D.N.Y. Mar. 27, 2013) ....21

*Alli v. Boston Market Co.*,
2011 U.S. Dist. LEXIS 101530 (D. Conn. Sept. 8, 2011) ....29

*Arena v. Plandome Taxi Inc.*,
2013 U.S. Dist. LEXIS 58169 (E.D.N.Y. Apr. 23, 2013) ....32

*Armstrong v. Weichert Realtors*,
2006 U.S. Dist. LEXIS 31351 (D.N.J. May 16, 2006) ....23

*Barnes v. Abandonment Consulting Servs.*,
2013 U.S. Dist. LEXIS 105702 (S.D. Tex. July 26, 2013) ....27

*Barrus v. Dick's Sporting Goods, Inc.*,
465 F. Supp. 2d 224 (W.D.N.Y. 2006) ....29

*Bramble v. Wal-Mart Stores, Inc.*,
2011 U.S. Dist. LEXIS 39457 (E.D. Pa. Apr. 11, 2011) ....20, 25

*Cano v. Four M Food Corp.*,
2009 U.S. Dist. LEXIS 7780 (E.D.N.Y. Feb. 3, 2009) ....29

*Capsolas v. Pasta Res. Inc.*,
2011 U.S. Dist. LEXIS 49936 (S.D.N.Y. May 9, 2011) ....38

*Colozzi v. St. Joseph's Hospital Health Center*,
595 F. Supp. 2d 200 (N.D.N.Y. 2009) ....38

*Colson v. Avnet, Inc.*,
687 F. Supp. 2d 914 (D. Ariz. 2010) ....24

*Damassia v. Duane Reade, Inc.*,
2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 5, 2006) ....29

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) ....28, 29

*Francis v. A&E Stores, Inc.*,
2008 U.S. Dist. LEXIS 83369 (S.D.N.Y. Oct. 15, 2008) ....29

*Garcia v. Freedom Mortg. Corp.*,
2009 U.S. Dist. LEXIS 103147 (D.N.J. Nov. 2, 2009)....29

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
282 F. Supp. 2d 91 (S.D.N.Y. 2003)....35, 36

*Gordon v. Kaleida Health*,
2009 U.S. Dist. LEXIS 95729 (W.D.N.Y. Oct. 14, 2009)....32, 33, 37, 38

*Guillen v. Marshalls of MA, Inc.*,
750 F. Supp. 2d 469 (S.D.N.Y. 2010) ("*Guillen I*")....15, 19, 21, 22

*Guillen v. Marshalls of MA, Inc.*,
841 F. Supp. 2d 797 (S.D.N.Y. 2012)....14, 20, 25, 27

*Guzelgurgenli v. Prime Time Specials Inc.*,
883 F. Supp. 2d.340 (E.D.N.Y. 2012) ....38

*Harriel v. Wal-Mart Stores, Inc.*,
2012 U.S. Dist. LEXIS 97527 (D.N.J. July 13, 2012)....16, 18, 25

*Hinterberger v. Catholic Health Sys.*,
2009 U.S. Dist. LEXIS 97944 (W.D.N.Y. Oct. 21, 2009)....37, 38

*Hoffman-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989)....14, 32

*Holbrook v. Smith & Hawken, Ltd.*,
246 F.R.D. 103 (D. Conn. 2007)....29

*Jenkins v. The TJX Companies Inc.*,
853 F. Supp. 2d 317 (E.D.N.Y. 2012) ....*passim*

*Khan v. Airport Mgmt. Servs., LLC*,
2011 U.S. Dist. LEXIS 133134 (S.D.N.Y. Nov. 16, 2011)....16, 21, 27

*Knispel v. Chrysler Group LLC*,
2012 U.S. Dist. LEXIS 21188 (E.D. Mich. Feb. 21, 2012)....38

*Lujan v. Cabana Mgmt., Inc.*,
2011 U.S. Dist. LEXIS 9542 (E.D. N.Y. Feb. 1, 2011)....36

*Manning v. Goldbelt Falcon*,
LLC, 2010 U.S. Dist. LEXIS 104029 (D.N.J. Sept. 29, 2010)....29

*Marcus v. Am. Contract Bridge League*,
254 F.R.D. 44 (D. Conn. 2008)....29

*McGlone v. Contract Callers, Inc.*,
867 F. Supp. 2d 438 (S.D.N.Y. 2012)....22

*McLaughlin v. Richland Shoe Co.*,
486 U.S. 128 (1988)....35

*Mike v. Safeco Ins. Co. of America*,
274 F. Supp. 2d 216 (D. Conn. 2003)....*passim*

*Moore v. PNC Bank, N.A.*,
2013 U.S. Dist. LEXIS 74845 (E.D. Pa. May 29, 2013)....*passim*

*Morrison v. Ocean State Jobbers, Inc.*,
2010 U.S. Dist. LEXIS 48560 (D. Conn. May 17, 2010)....29

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010)....15, 22, 25, 26

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
2012 U.S. Dist. LEXIS 127824 (S.D.N.Y. Sept. 6, 2012)....33

*Neary v. Metro. Prop. & Cas. Ins. Co.*,
517 F. Supp. 2d 606 (D. Conn. 2007)....28

*O'Donnell v. Robert Half Int'l, Inc.*,
429 F. Supp. 2d 246 (D. Mass. 2006)....27

*Perkins v. S. New Eng. Tel. Co.*,
669 F. Supp. 2d 212 (D. Conn. 2009)....29

*Perkins v. Southern New England Telephone Co.*,
2009 U.S. Dist. LEXIS 103833 (D. Conn. Nov. 4, 2009)....31, 33

*Ritz v. Mike Rory Corp.*,
2013 U.S. Dist. LEXIS 67840 (E.D.N.Y. May 13, 2013)....33

*Robinson v. Ryla Teleservices, Inc.*,
2011 U.S. Dist. LEXIS 147027 (S.D. Ala. Dec. 21, 2011)....38

*Rosario v. Valentine Avenue Discount Store, Co., Inc.*,
828 F. Supp. 2d 508 (E.D.N.Y. 2011)....35, 36

*Vasquez v. Vitamin Shoppe Indus.*,
2011 U.S. Dist. LEXIS 74376 (S.D.N.Y. July 11, 2011)....20, 23

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009)....24

*Wallace v. Kato*,
549 U.S. 384, 127 S. Ct. 1091, 166 L.Ed.2d 973 (2007)....................31

*Witteman v. Wisconsin Bell, Inc.*,
2010 U.S. Dist. LEXIS 8845 (W.D. Wis. Feb. 2, 2010)....................38

*Yahraes v. Rest. Assocs. Events Corp.*,
2011 U.S. Dist. LEXIS 23115 (E.D.N.Y. Mar. 8, 2011)....................33

*Zaniewski v. PRRC Inc.*,
848 F. Supp. 2d 213 (D. Conn. 2012)....................28

*Zerilli-Edelglass v. New York City Transit Authority*,
333 F.3d 74 (2d Cir. 2003)....................31

**RULES**

Fed. R. Civ. P. 30(b)(6)....................10, 17, 18

**STATUTES**

29 U.S.C § 216(b)....................*passim*

29 U.S.C. § 255(a)....................31

29 U.S.C. § 256....................31

29 C.F.R. § 202(b)....................26

29 C.F.R. § 541.203(a)....................6, 26

# I. INTRODUCTION

Plaintiff Joseph Carlone's motion to conditionally certify this action under 29 U.S.C § 216(b) should be denied. Based on little more than Progressive's classification of employees working as Claims Generalist Associates ("CGAs") as exempt, Carlone asks this Court to conditionally certify a class under the Fair Labor Standards Act ("FLSA") of over 2,000 CGAs across the country in 49 states at more than 280 locations. Common classification alone, however, is not a sufficient basis for conditional certification. Instead, Carlone must make some showing that he is similarly situated to those he seeks to represent. Having not shown that he is similarly situated to even a single other CGA, Carlone has utterly failed to meet this burden.

After over 17 months of litigation, Carlone remains the only plaintiff. Not one other person holding a CGA position has opted into this lawsuit. Though Carlone testified that no CGAs perform the exempt duties described in the CGA job description, he provides no evidence other than his own speculation to support this assertion. He also does not deny that a number of his fellow Connecticut CGAs have submitted declarations stating that they performed the very exempt duties which Carlone disavows. Indeed, Carlone's testimony that he performed primarily non-exempt work is belied by his own written words in ClaimStation, which not only undercut his ability to show that he or any other CGAs were similarly situated, but also verify that any collective action would require the manifestly unmanageable task of a page-by-page, person-by-person, day-by-day analysis of thousands of ClaimStation entries.

Carlone's attempt to rely on documents to meet his burden fares no better. He attempts to show a nexus between all CGAs by claiming they were responsible for the same list of "accountabilities." However, Carlone has not shown that the "accountabilities" document applied to him, let alone to CGAs nationwide, and testified that he himself did not perform many of the duties listed in the document. Moreover, the allegedly uniform CGA job duties Carlone

identifies in his brief either are not supported, or are directly contradicted, by the very document upon which he relies. Carlone's remaining exhibits are a combination of general training and state specific documents which, if anything, demonstrate the inappropriateness of collective treatment.

Lacking any evidentiary support that he is similarly situated to other CGAs, Carlone repeatedly attempts to rely on a "modest" standard for conditional certification. However, the standard is not non-existent. Under Carlone's theory, because he had the job title of CGA and because all CGAs are classified as exempt, a nationwide collective action should be conditionally certified. If this were so, then every suit challenging the classification of an exempt job automatically would be entitled to conditional certification. But that is not the law, and courts repeatedly have refused to conditionally certify FLSA actions upon the meager showing offered by Carlone. Thus, because Carlone has failed to show that he is similarly situated to the class he seeks to represent as a matter of law, his request to certify a nationwide collective action must be denied.

## II. STATEMENT OF FACTS

### A. Overview Of Progressive's Claims Department And CGA Position

Defendant Progressive Casualty Insurance Company provides personal automobile insurance and other types of specialty property-casualty insurance. (Exhibit 1, excerpts from the deposition of Joseph Smith ("Smith Dep.") p. 44). Progressive has five primary business units, one of which is the Claims Business Unit. (Exhibit 2, Declaration of Joseph Smith ("Smith Decl.") ¶ 4). Progressive has over 12,000 employees within its Claims Business Unit who are spread across more than 280 claims offices and approximately 54 service centers. (*Id.* at ¶ 4).

Progressive has employed Claims Generalist Associates ("CGA")[1] in virtually every state at over 280 different claims offices. (Exhibit 4, Declaration of Cynthia Barth, ¶ 2, Ex. A). Progressive CGAs have been supervised by over 1,000 different managers. (*Id.*).

Progressive has a job description for its CGA position. (Carlone Dep. 53-54, Ex. 5, CGA Job Description). Ignored by Carlone, the CGA job description summarizes the CGA position by confirming the expectation that CGAs perform claims adjusting work:

> Investigates, analyzes, and determines the extent of Progressive's liability concerning loss or damages, and attempts to affect settlement with claimants. Corresponds with, or interviews, medical specialists, agents, police, medical professionals, witnesses, or claimants to compile information. Calculates benefit payments and approves payment of claims within a certain monetary limit. (*Id.*).

The CGA job description also identifies CGA job duties to include tasks such as investigating insurance claims, analyzing information gathered to determine the course of action (payment, investigation or denial) and affecting the settlement of claims. (*Id.*).

### B. <u>Job Expectations For CGAs At Progressive's Newington, Connecticut Facility At Which Carlone Was Employed</u>

Carlone was hired by Progressive in 2007 in the position of Claims Service Representative. (Carlone Dep. 16-17, 31). Carlone was promoted into a CGA position in approximately March 2010 and worked out of Progressive's Glastonbury, Connecticut claims office. (*Id.* at 16-17, 35, 53-54; Complaint at ¶ 7). In the summer of 2011, Carlone and the other Glastonbury CGAs moved to the renovated Newington location, where Progressive operates a claims service center. (Carlone Dep. 35-36; Exhibit 5, Declaration of Justine Cedeno ("Cedeno Decl.") ¶ 2).

---

[1] While Progressive's CGA position is also known by the phrase "File Owner" and was referred to as such in Carlone's deposition, it is referred to by its official job title in this brief. (Exhibit 3, excerpts and cited exhibits from the deposition of Joseph Carlone ("Carlone Dep.") 53-54; Smith Dep. 32-33).

Justine Cedeno is the Progressive Supervisor at the Newington facility and a former CGA. (Cedeno Decl. ¶ 2). Ms. Cedeno has directly supervised several CGAs at the facility, including Carlone. (*Id.*). Ms. Cedeno has expected her CGAs to work as insurance claims adjusters and make insurance coverage and liability decisions. (*Id.* at ¶ 22). Once a claim is assigned to a Newington CGA, the expectation is that the CGA will handle the claim from beginning to end. (*Id.* at ¶ 24). There are no Progressive scripts or cheat sheets for determining liability. (Cedeno Decl. ¶ 33; Smith Dep. 233). Each claim and each liability determination is different, and Newington CGAs are expected to complete an individualized investigation to obtain the information they need to make their liability decisions. (*Id.*).

Newington CGAs' duties can include interviewing witnesses, conducting scene investigations, inspecting property damage to ensure the accident is consistent with witness testimony, resolving coverage verification questions (also known as "CVQs"),[2] reviewing police reports, making witness credibility determinations, determining and applying the relative duty of care owed and exercised by parties to an accident, and analyzing variables such as skid marks, traffic, weather conditions, applicable speed limits and traffic laws. (Smith Dep. 233; Cedeno Decl. ¶¶ 28, 33; Smith Decl. Ex. A, Carlone's ClaimStation notes). After Newington CGAs obtain the information they deem necessary, they are expected to make a liability decision, including determining the relative percentages of fault, using their own discretion and independent judgment. (Smith Dep. 233; Cedeno Decl. ¶ 34; Smith Decl. Ex. A).

---

[2] CVQs are communicated through Progressive's ClaimStation computer system, which alerts CGAs that, based on the reported accident and relevant policy terms, there are certain issues the CGA must resolve prior to determining whether a claim is covered under the policy. (Smith Dep. 152-53). There are dozens of possible CVQs that CGAs may be required to resolve. (Cedeno Decl. ¶ 29). However, there are coverage issues that CGAs must solve that do not necessarily result in CVQs being generated. (*Id.*).

### C. Carlone's Employment History With Progressive

Carlone worked out of Progressive's Newington facility reporting to Ms. Cedeno in a CGA role until October 22, 2012. (Carlone Dep. 16-17, 48-49; Smith Decl. ¶ 9). Carlone began a rotation in the non-exempt position of Estimator on October 22, 2012. (Smith Decl. ¶ 9). As a result, he no longer is working for Progressive as a CGA and currently receives overtime compensation for any hours worked over 40 during any work week. (Smith Decl. ¶ 9).

Carlone never worked at any Progressive location other than Glastonbury (which now has no CGAs) and Newington, Connecticut. (Carlone Dep. 34-35, 84-85). As a result, he has no personal knowledge of the operations of any other Progressive claims office or service center at which CGAs work. (*Id.* at 34-35, 84-85).

### D. The Work Carlone Allegedly Performed As A CGA Is Entirely Different From Ms. Cedeno's Expectations For The Position And What Is Described In The CGA Job Description

The job Carlone says he performed as a CGA with Progressive is entirely different from Ms. Cedeno's expectations for the position and what is described in the CGA job description. Carlone testified that: "**There's no one at Progressive that does the description that's described in the CGA job description**." (Carlone Dep. 34). Carlone also testified that while he created a job description for the "file owner" job he allegedly performed, he has never seen a job description at Progressive that describes this alleged role. (*Id.*).

Carlone denied performing many of the duties identified in the CGA job description, including denying that he investigated claims, interviewed witnesses, or that he was responsible for adjusting claims. (*Id.* at 68-70, 292-97). Carlone also denied making coverage decisions, instead alleging that he answered computer generated "CVQ" questions and, if he was unable to do so, he referred the claim to Progressive Manager Joseph Smith. (*Id.* at 117-18). Carlone also testified that he did not make liability decisions on claims, but rather "codes" liability based on

alleged unwritten standards of liability. (*Id.* at 215-16). Carlone also claims he did not use his own judgment to make liability decisions on complex claims, but rather had Ms. Cedeno make the decisions. (*Id.* at 80-81).

### E. Carlone's Alleged Duties Are Markedly Different From That Of Other Connecticut CGAs

Carlone has not provided any evidence - outside of his own conclusory statements - that a single other Progressive CGA in Connecticut or Progressive's other 280+ claims center locations performed job duties similar to his. As noted, Carlone never worked outside of Connecticut as a Progressive CGA. (Carlone Dep. 34-35). He never watched any CGAs outside of Connecticut handle claims. (*Id.* at 84-85). He only spoke with Connecticut and Rhode Island CGAs regarding how they perform their jobs. (*Id.*). Thus, Carlone's firsthand knowledge of the duties performed by other CGAs can extend no further than Connecticut.

In contrast to Carlone's alleged experience as a CGA, Carlone's former CGA co-workers at Newington and other Connecticut CGAs testified that they did perform the exempt duties of the CGA position as expected by Ms. Cedeno and described in the CGA job description:[3]

| Essential Function: | Carlone's Testimony: | Other CGAs Testimony: |
|---|---|---|
| Interviewing insureds and witnesses | No. (Carlone Dep. 68, 291) | Yes. "As part of my job, I spent significant time interviewing parties involved in the claim." (Clarke Decl. ¶¶ 18-19; *see also* Tufano Decl. ¶¶ 14-18; Farina Decl. ¶ 10; ; Deras Decl. ¶ 11; McKee Decl. ¶ 19; Cretella Decl. ¶ 13; Apuzzo Decl. ¶¶ 14-15)[4] |
| Inspecting property damage | No. (Carlone Dep. 292) | Yes. "I have also spoken to repair shops to determine the condition of a car, received pictures, and conducted third- |

[3] 29 C.F.R. § 541.203(a) provides that: "Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, **if their duties include** activities such as **interviewing insureds**, **witnesses** and physicians; **inspecting property damage**; reviewing factual information to prepare damage estimates; **evaluating and making recommendations regarding coverage of claims; determining liability** and total value of a claim; **negotiating settlements**; and making recommendations regarding litigation." (emphasis added).

[4] Declarations from 17 individuals who, like Carlone, worked as Progressive CGAs in Connecticut are attached as Exhibits 5-21. Progressive provided these declarations along with a list of the Connecticut CGAs to Carlone during discovery.

| | | |
|---|---|---|
| | | party interviews to get a full understanding." (Bennett Decl. ¶ 21; *see Farina* Decl. ¶ 11; Sabo Decl. ¶ 17) |
| Evaluating and making recommendations regarding coverage of claims | No. (Carlone Dep. 292-93) | Yes. "I determined whether there was coverage for my assigned claims." (Farina Decl. ¶ 6; *see also* Tufano Decl. ¶¶ 10-12; Deras Decl. ¶¶ 10-11; Husted Decl. ¶¶ 10-11; Bennett Decl. ¶¶ 10-11, 14; Cretella Decl. ¶¶ 12-14; Delucia Decl. ¶ 12; Sabellico Decl. ¶¶ 9-12; Talviste Decl. ¶ 15) |
| Determining liability | No. (Carlone Dep. 295-96) | Yes. "I determine liability by reviewing the applicable policy, information about the damage to the vehicle, the police report and statements of the involved parties, and when necessary, any witnesses." (Husted Decl. ¶ 13; *see also* Tufano Decl. ¶¶ 19-20; Farina Decl. ¶¶ 13-17; Sabo Decl. ¶¶ 8, 19-20; McKee Decl. ¶¶ 16-17; Sabellico Decl. ¶ 16; Monahan Decl. ¶¶ 9-10; Apuzzo Decl. ¶ 17; Cedeno Decl. ¶ 16; Ellis Decl. ¶¶ 8-9) |
| Negotiating Settlements | No. (Carlone Dep. 296-97) | Yes. "I often negotiated with the insurance adjuster from the other insurance company regarding the comparative liability of the parties." (Sabo Decl. ¶ 21; *see also* Tufano Decl. ¶¶ 21-24; Clarke Decl. ¶ 29; Deras Decl. ¶ 18; McKee Decl. ¶ 22; Monahan Decl. ¶ 12); Cedeno Decl. ¶ 18) |

The notable differences between Carlone's alleged experience as a CGA and that of his former co-workers does not stop there. For instance, while Carlone testified that he was required to rigorously follow various "scripts" such as the recorded statement guide, his co-workers testified that any "scripts" were merely job aids primarily for new CGAs and were discretionary. (*See, e.g.*, Deras Decl. ¶ 13; Clarke Decl. ¶ 19; Husted Decl. ¶¶ 7, 15; Bennett Decl. ¶¶ 12, 17-18; McKee Decl. ¶ 6; Sabellico Decl. ¶15; Cody Decl. ¶ 12). Likewise, contrary to Carlone's testimony that he did not exercise discretion and independent judgment in performing his CGA role (Carlone Dep. 284-85), Connecticut CGAs testified that they regularly exercised discretion and independent judgment in making their coverage and liability decisions and in other matters of significance to Progressive. (*See* Farina Decl. ¶ 20; Clarke Decl. ¶¶ 30, 34-35; Sabo Decl. ¶ 9; Bennett Decl. ¶¶ 4, 10, 13, 23; Cretella Decl. ¶¶ 5-6). Thus, the record evidence shows overwhelmingly that Carlone's duties, as he described them, are <u>not</u> similar to those of other CGAs.

In addition to these differences, Carlone's daily ClaimStation entries reflect the need for a person-by-person analysis of what job duties a CGA performs. While Carlone claims in his testimony that he did not perform claims adjusting duties, his diary paints a very different picture:[5]

| Essential Function: | Carlone's Testimony | Carlone's Written ClaimStation Entries: |
|---|---|---|
| Interviewing insureds and witnesses | No. (Carlone Dep. 68, 291) | Yes. LIABILITY DECISION COMPLETE . . . "DECISION BASED ON PR AND NOD'S STATEMENT." (Smith Decl. Ex. A, Prog_003408). |
| Inspecting property damage | No. (Carlone Dep. 292) | Yes. LIABILITY DECISION COMPLETE . . . "DECISION BASED ON PR, STATEMENTS, VEHICLE DAMAGES . . ." (*Id.* at Ex. A, Prog_003714). |
| Evaluating and making recommendations regarding coverage of claims | No. (Carlone Dep. 292-93) | Yes. COVERAGE DENIAL . . . "BASIS OF DENIAL IS THAT INSD LIKELY STRUCK THE DEER, THEN CALLED PROG TO ADD FULL COVERAGE, AND THEN CALLED THE POLICE." (*Id.* at Ex. A, Prog_002502). |
| Determining liability | No. (Carlone Dep. 295-96) | Yes. "I FIND THE ID 60% AT FAULT AND THE CD 40% . . . FINDING BOTH PARTIES EQUALLY AT FAULT . . . FINDING 20% FAULT ON INSD." (*Id.* at Ex. A, Prog_001339, Prog_002031, Prog_003714). |
| Negotiating Settlements | No. (Carlone Dep. 296-97) | Yes. "MY GOAL IS TO REACH AN UPFRONT AGREEMENT WITH THEM SO AS TO AVOID ARBITRATION." (*Id.* at Ex. A, Prog_003717). |

## III. <u>OMISSIONS AND INACCURACIES IN CARLONE'S STATEMENT OF FACTS</u>

As discussed below, the "facts" Carlone asserts in support of his motion have no foundation other than his own extrapolated conclusory statements, documents which he has not shown applied to him, let alone any other CGA, and inaccurate depictions of documents and testimony. Indeed, Carlone has not offered any evidence by way of testimony or documents which suggests that a single other Progressive CGA performs the job he allegedly performed.

[5] Carlone testified that his ClaimStation notes are accurate and the best available record of the work he performed on his assigned claims as a CGA. (Carlone Dep. 248-49).

A. **In Addition To The Individualized Differences In How He Performed His Job, Carlone Has Not Identified A Single Uniform Policy That Applies To All Progressive CGAs**

Carlone does not and cannot rely upon the CGA job description to support his argument that a collective action is appropriate because it reflects exempt job duties and he contends it did not accurately describe the work that he performed. Instead, Carlone ignores it and has attached a smattering of irrelevant and unexplained documents in an attempt to support his conditional certification motion. Of these, Carlone seems to rely primarily on what he describes as a "list of accountabilities" (Exhibit E to Carlone's brief), stating in conclusory fashion that all CGAs "are responsible for the same list of accountabilities." (Pltf's Brief pp. 5, 14). However, Carlone has not offered any evidence as to what this document is or that he was subject to it, let alone evidence that it applied to all Progressive CGAs nationwide. This document was introduced as Exhibit 4 at Ms. Cedeno's deposition. (Exhibit 22, excerpts and cited exhibits from the deposition of Justine Cedeno ("Cedeno Dep.") 105-110, 115, Ex. 4). Ms. Cedeno testified that she did not remember seeing the document prior to her deposition and that it was not the document which she believed described the job of a CGA:

Q. Okay. Have you ever seen [Exhibit 4] before?

A. I don't remember this.

Q. Okay. So you testified earlier that there was a document, I think, in HR Express that described the functions of a file owner. Is it your testimony that this is not the document?

A. This is not the document.

(*Id.* at 115). Thus, this is not what Carlone represents it to be.

Also conspicuously absent from Carlone's brief is any mention that Joseph Smith – Ms. Cedeno's manager who has responsibility over Progressive's Southern New England

(Connecticut and Rhode Island) CGAs – testified that the "list of accountabilities" was *not* a document that described the duties of CGAs on a nationwide basis:

> Q. Do you believe that [Exhibit 4] is a list of File Owner accountabilities for all File Owners in the entire company nationwide?
>
> [Objections – clarifies Mr. Smith was testifying only in an individual capacity]
>
> A. I don't believe so; because speaking for my unit, there may be things here that – there are things that aren't here that my representatives do.

(Smith Dep. 19-20, 45-46, 64-65, 74-75, Exhibit 4).

Kathy Kramer - Progressive's Fed. R. Civ. P. 30(b)(6) witness – also testified that the job expectations for the CGA position were contained in the CGA job description and that Progressive classified the CGA job as exempt based on the CGA job description. (Exhibit 23, excerpts from the deposition of Kathy Kramer ("Kramer Dep.") pp. 8-15). Ms. Kramer also testified that the "list of accountabilities" was <u>not</u> considered in determining the FLSA status for the CGA role. (*Id.* at 78-79, Ex. 4).

Carlone also was asked about this document during his deposition but denied that it accurately described his job duties. (*See* Carlone Dep. 105-11, 113-17, 122-35, Exhibits 7 and 8). Carlone testified the document was a screenshot from "The Highway" and "appears to be listing the things that file owners are accountable for." (*Id.* at 109). Carlone went through the document "line by line" and, as with the CGA job description, identified a number of tasks on the document that he allegedly did not perform, including making coverage and liability decisions. (*Id.*). Thus, the list of "accountabilities" shows nothing on which a nationwide collective action can be conditionally certified.

Carlone's reliance on the remaining documents to which he cites is equally unpersuasive. Carlone attaches four snippets of unremarkable training documents which provide instruction on

how to use the ClaimStation computer system (Ex. G to Pltf.'s brief) and stress the importance of informing Progressive customers that they have a choice as to where their damaged vehicles are repaired (Exs. H, I and P to Pltf.'s brief).

Moreover, as summarized by the below chart, Carlone does not offer any evidence or testimony that the remaining documents upon which he relies applied to him (with the exception of the Recorded Statement Guide), much less to all Progressive CGAs nationwide:

| Plaintiff's Exhibit | Exhibit Description | Carlone's Evidence As To The Exhibit's Application Or Use |
|---|---|---|
| J | "2012 National Field File Owner Script-Intent and Guidance (Pltf. Brief at 7) | None. (See Pltf.'s Brief). This document was produced in discovery after being provided by a Progressive employee from Georgia, not from a national database or source. (Exhibit 26, Declaration of Pam Fain ("Fain Decl."), ¶ 3) |
| K | "Police Report Ordering Guideline" (Pltf. Brief at 8) | None. (See Pltf.'s Brief). This document was produced in discovery after being provided by a Progressive employee from Iowa, not from a national database or source. (*Id.* at ¶ 4) |
| L | "Recorded Statement Taking Guide" | None. (See Pltf.'s Brief). While Carlone testified that he was required to follow the Recorded Statement Guide, other Connecticut CGAs testified it was merely a tool that could be used at their discretion. (*See, e.g.*, Deras Decl. ¶ 13; Clarke Decl. ¶ 19; Husted Decl. ¶¶ 7, 15; Bennett Decl. ¶¶ 12, 17-18; McKee Decl. ¶ 6). |
| M | "File Owner Fanatical Service" | None. (See Pltf.'s Brief). This document was produced in discovery after being provided by a Progressive employee from Iowa, not from a national database or source. (Fain Decl. at ¶ 5) |
| N | "Witness Interview" | None. (See Pltf.'s Brief). This document was produced in discovery after being provided by a Progressive employee from Kentucky, not from a national database or source. (*Id.* at ¶ 6) |
| O | "Initial Call Flow - A Guide" | None. (See Pltf.'s Brief). This document was produced in discovery after being provided by a Progressive employee from Illinois, not from a national database or source. (*Id.* at ¶ 7) |
| Q | "SC/Network Field File Owner Job Aid" | None. (See Pltf.'s Brief). This document was produced in discovery after being provided by a Progressive employee from South Carolina, not from a national database or source. (*Id.* at ¶ 8) |
| R | "Liability Template" | None. (See Pltf.'s Brief). This document was produced in discovery after being provided by a Progressive employee from Illinois, not from a national database or source. (*Id.* at ¶ 9) |
| S | "All Repair Templates" | None. (See Pltf.'s Brief). This document was produced in discovery after being provided by a Progressive employee from Illinois, not from a national database or source. (*Id.* at ¶ 10) |

## B. Carlone Has Presented No Evidence To Support His Blanket Assertion That CGAs Share Common Duties

While Carlone makes a number of blanket assertions in his certification brief as to the job duties performed by all Progressive CGAs, he provides no evidence to support his sweeping allegations. Instead, Carlone relies on his own testimony, documents which he does not allege even applied to him (let alone to every other Progressive CGA) and a scattering of misrepresented testimony. Moreover, these allegedly uniform duties are either unsupported or expressly contradicted by the very "Assessment" document which Carlone alleges describes a "common set of job duties" for CGAs. For instance:[6]

| Carlone's Allegedly Nationwide Uniform Duty | Alleged Nationwide Duty Supported By The Evidence? | Alleged Nationwide Duty Identified In The "Assessment" Document? |
|---|---|---|
| CGAs do not determine liability, but rather "code" liability. (Pltf.'s Brief p. 7). | No. Carlone only cites his own affidavit – no evidence of a nationwide duty. Allegation is also contrasted by Carlone's fellow Connecticut CGAs. (*See, e.g.*, Tufano Decl. ¶¶ 19-20; Farina Decl. ¶¶ 13-17; Sabo Decl. ¶¶ 8, 19-20; Husted Decl. ¶ 13); McKee Decl. ¶¶ 16-17; Sabellico Decl. ¶ 16; Monahan Decl. ¶¶ 9-10; Apuzzo Decl. ¶ 17). | No. Document states that file owners are responsible for "completing and communicating timely and accurate coverage and liability decisions" |
| "This [codes liability] decision typically pertains only to simple accidents ..." (Pltf.'s Brief p. 7) (citing Smith Dep. 102:17-24). | No. Misstates Mr. Smith's deposition testimony. Mr. Smith testified that during his training 13 years ago, he remembered "walking through basic scenarios just to help us walk through a claim for the first time and what you're supposed to do and look for." (Smith Dep. 102). In no way did Smith testify that CGAs' liability determinations typically pertain to simple accidents. | No. Document states that file owners are responsible for "completing and communicating timely and accurate coverage and liability decisions" – there is no restriction as to complexity. |
| File owners are not insurance adjusters. (Pltf.'s Brief pp. 5- | No. Carlone only cites his own affidavit – no evidence of nationwide duties. | No. Document states that file owners are responsible |

[6] This chart is not meant to be an exhaustive list of all the unsupported/overreaching allegations contained in Carlone's motion. However, in addition to the general inaccuracy of Carlone's characterization as to the duties performed by all Progressive CGAs, the fact that Carlone supports virtually all of these allegations with either (1) his own testimony; (2) Mr. Smith's testimony (who only testified as to CGAs in Connecticut and Rhode Island) or (3) no testimony at all, is proof alone that Carlone has failed to identify common duties among all Progressive CGAs nationwide.

| | | |
|---|---|---|
| 6). | Allegation that CGAs do not perform duties which the DOL and courts have repeatedly found to constitute the duties of exempt "insurance adjusters" are contrasted by Carlone's fellow Connecticut CGAs. (*See, e.g.*, Deras Decl. ¶¶ 3, 5; Sabo Decl. ¶¶ 5, 8; Bennett Decl. ¶¶ 3-4; Cretella Decl. ¶¶ 3-6; Delucia Decl. ¶¶ 3, 5-7). | for, among other things, making coverage and liability decisions, "ensuring the claim is properly resolved," and "ongoing communication with key parties." These are the essential duties of an exempt "insurance adjuster." |
| The role of CGAs is to "review the policy, interview all parties, find out all facts about the accident and to confirm that coverage applies. (Pltf.'s Brief 5) (citing Smith Dep. 90). | No. Misstates Mr. Smith's deposition testimony. Mr. Smith testified that this was Carlone's role in fulfilling the obligations contained in Progressive's Connecticut insurance policy document. (Smith Dep. 88-90). | No. Document does not designate a "role." |
| "More complicated claims require file owners to consult with their supervisors." (Pltf.'s Brief p. 7). | No. Carlone only cites his own affidavit – he provides no evidence of a nationwide requirement or practice. Moreover, this allegation is contrasted by Carlone's fellow Connecticut CGAs. (*See, e.g.*, Tufano Decl. ¶ 20; Clarke Decl. ¶ 28; Monahan Decl. ¶ 10; Deras Decl. ¶ 17; Bennett Decl. ¶ 24). | No. Document states that file owners have "accountability for ensuring the claim is properly resolved." |
| Progressive provides "File Owners" with various scripts, checklists, templates and matrixes to use while performing their work. (Pltf.'s Brief. pp. 7-8) (citing various documents). | No. Carlone does not offer any testimony to support this, and does not even allege that he was issued or used the documents he cites in support. | No. |

### C. Despite The Fact That This Case Has Been Pending Since February 2012, No Other CGA Has Joined

This case has been pending since February 2012. Carlone has been an active Progressive employee during all relevant times, and has worked side-by-side with individuals he now seeks to be issued notice to join his lawsuit. There has been significant time for discovery. Still, Carlone remains the only plaintiff in this lawsuit, and he does not offer testimony from any other CGAs to support his request for a conditionally certified nationwide class. In fact, for a brief period of time, Carlone had one opt-in plaintiff (who worked as a CGA in Scranton, Pennsylvania). However, the opt-in quickly withdrew from the case (ECF Doc. 39), which

vividly demonstrates (1) the case is known outside of Connecticut; and (2) the complete lack of interest in the case from the individuals Carlone seeks to represent.

Thus, in the end, Carlone is seeking conditional certification of a lawsuit that has garnered no opt-ins in over 17 months, and is doing so despite evidence showing that he is not similarly situated to the other CGAs within his own office, much less those around the country, and without a single document or policy showing that all CGAs performed the same alleged non-exempt work he contends made up his job. As set forth below, this is no basis for conditional certification under 29 U.S.C § 216(b).

## IV. LAW AND ARGUMENT

### A. Carlone Must Prove That He And The Putative Class Members Were All Subject To A Uniform Policy Or Plan That Violated The FLSA

Congress enacted Section 16(b) of the FLSA to limit the size and scope of wage and hour suits. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). Thus, the Supreme Court has authorized district courts to conditionally certify and send out notice of a collective action only "in appropriate cases." *Id.* The Court has cautioned that this discretion is not "unbridled," and that although "court intervention in the notice process for case management purposes" is an appropriate use of the court's power, "the solicitation of claims" is not, and "courts must be scrupulous to respect judicial neutrality." *Id.* at 174. Moreover, "it would be a waste of the Court's and litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 803 (S.D.N.Y. 2012) (adopted by *Guillen v. Marshalls of MA, Inc.*, 2012 U.S. Dist. LEXIS 91639 (S.D.N.Y. June 30, 2012) ("*Guillen II*")).

Accordingly, to succeed on a motion for conditional certification in the Second Circuit, a plaintiff must demonstrate that the proposed class members are "similarly situated" under 29 U.S.C. § 216(b) with respect to their allegation that the law has been violated. *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010) ("*Guillen I*"). To meet this burden, plaintiffs must make a modest factual showing sufficient to demonstrate that "they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.*; *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). As the Second Circuit has made clear, the requisite modest factual showing "cannot be satisfied simply by unsupported assertions." *Myers*, 624 F.3d at 555.

As one court in this Circuit has recently explained, courts grant FLSA conditional certification in one of two instances. First, a plaintiff may show that his claims are based on a policy common to all putative class members where the policy itself is illegal. *Jenkins v. The TJX Companies Inc.*, 853 F. Supp. 2d 317, 322-23 (E.D.N.Y. 2012) (collecting cases). Second, a plaintiff can provide evidence of a facially legal policy applied to all putative class members, but the policy was de-facto illegal based on its implementation. *Id.*; *see also Guillen*, 750 F. Supp. 2d at 477. To make a showing under this second method, a plaintiff must present evidence beyond his own conclusory allegations that the facially legal policy was applied in an illegal manner across the class he seeks to represent. *See, e.g., Jenkins*, 853 F. Supp. 2d at 323. Neither is present in this case.

### B. Courts In This Circuit And Others Have Routinely Denied Conditional Certification When Presented With The Type Of Insufficient "Evidence" That Carlone Proffers

While the required conditional certification showing "may be modest, 'it is not non-existent.'" *Guillen II*, 2012 U.S. Dist. LEXIS 91639 at *4 (quoting in part *Khan v. Airport Mgmt. Servs., LLC*, 2011 U.S. Dist. LEXIS 133134 (S.D.N.Y. Nov. 16, 2011)). FLSA plaintiffs

still must show that they are bound together by a policy/practice that is alleged to have violated the FLSA. *Id.* "For this reason, courts in this Circuit have routinely held that the mere fact of a common FLSA-exempt designation, job description, or uniform training is insufficient to find [individuals] 'similarly situated' for FLSA purposes." *Id.* at *3. In other words, "courts in this Circuit have routinely declined to authorize collective action notice when faced with similarly lacking evidence." *Khan v. Airport Mgmt. Servs.*, LLC, 2011 U.S. Dist. LEXIS 133134 at *16 (S.D.N.Y. Nov. 16, 2011); *see also Harriel v. Wal-Mart Stores, Inc.*, 2012 U.S. Dist. LEXIS 97527 at *13 (D.N.J. July 13, 2012) ("[i]n spite of the modest factual nexus evidentiary standard, courts have not hesitated to deny conditional certification when evidence is lacking.") (citations omitted).

Thus, even when plaintiffs move for conditional certification during the initial stages of litigation and are afforded the "lenient" standard of review, they must still provide evidence of "a common thread binding [the] proposed class of employees" showing that they were victims of the same illegal common policy or plan. *Mike v. Safeco Ins. Co. of America*, 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003). Evidence that is specific to the named plaintiff or plaintiffs is not enough to satisfy this burden. *Id.* at 221 ("[b]ecause the proof in this case is specific to the individual, Mike has not provided evidence of a common thread binding his proposed class of employees."). Indeed, courts specifically have rejected attempts to conditionally certify FLSA collective misclassification actions where, as here, the plaintiff's evidence is limited to: (1) an allegation of a facially lawful policy or practice (such as a job description); (2) the fact that an employer treats all members of the proposed class as exempt, and (3) no or limited evidence that anyone other than the plaintiff was required to perform predominantly non-exempt tasks.

For example, in *Jenkins*, 853 F. Supp. 2d at 317, the plaintiff sought a nationwide FLSA collective action of assistant store managers (ASMs), alleging they were wrongfully classified as exempt. In support, the plaintiff alleged that the defendant had a facially lawful job description that applied to all putative class members, uniform training materials, and cited the defendant's Fed. R. Civ. P. 30(b)(6) witness' testimony that the defendant designated the same roles and responsibilities for the assistant managers nationwide. *Id.* at 321-22. However, the plaintiff's only evidence that the defendant had a common policy of requiring the ASMs to perform non-exempt work was the plaintiff's own deposition testimony discussing his own personal experiences – he did not submit any affidavits, depositions or other evidence to support his allegation that other ASMs primarily performed non-exempt duties. *Id.*

The court denied conditional certification and expressly rejected the plaintiff's argument that conditional certification was proper merely upon a showing that he was subjected to an illegal application of a common legal policy with no supporting testimony other than his own. *Id.* at 323-25. As the court cogently explained, the plaintiff was attempting to certify the class by extrapolation only from his own experiences:

> [T]he argument that a plaintiff need only show that he performed tasks in contravention of a common legal policy 'boils down to the proposition that any employee classified as exempt by a company that does business nationwide is entitled to approval of a collective action for all employees of that business – who may number in the thousands and be spread across all 50 states – simply based on the employee's testimony that he was required to perform non-exempt tasks.' *Id.* at 324.

The court rejected this argument because "it ignores the requirement that plaintiff show he is similarly situated *to the employees he proposes to include in the collective action* with respect to his claim that he performed non-exempt duties." *Id.* at 324 (emphasis added). Because of the

plaintiff's "meager" showing, the court refused to certify a class of 700 employees at more than 200 stores nationwide. *Id.* at 324-25.

Similarly, in *Harriel*, 2012 U.S. Dist. LEXIS 97527 at *13-17, the plaintiff was an overnight assistant manager (OAM) who alleged he was misclassified because he performed non-exempt tasks. Like Caroline, he moved for conditional certification relying only on his own testimony, the defendant's uniform job description, training and exempt status of OAMs. The court denied the motion because of the plaintiff's "total failure of proof that he has anything in common with other OAMs with respect to the subject matter of this action," including his failure to offer any evidence that other OAMs spent significant time on non-exempt tasks. *Id.* at *13-17. The court explained that:

> The existence of a job description containing "many managerial tasks" applicable to a certain position, paired with a superficial allegation that the plaintiff was improperly classified as exempt under the FLSA, "misses the point" of a putative FLSA collective action such as the one pursued here, insofar as the action "turns on the alleged discrepancy between the job on paper and the job in practice" but the evidence fails to show how the plaintiff and others were "similarly subjected to an improper compensation practice" by the defendant. *Id.* at *16-17 (internal citations omitted).

In *Moore v. PNC Bank, N.A.*, 2013 U.S. Dist. LEXIS 74845 (E.D. Pa. May 29, 2013), the plaintiff sought conditional certification of a nationwide FLSA collective action based on alleged misclassification and submitted evidence showing that the employer treated all putative class members as exempt, the defendant admitted the job duties and functions were the same at each location nationwide, a common job posting was used for each vacancy, the defendant used detailed companywide policies to ensure the branches were uniformly operated, and all putative class members completed mandatory training developed by the corporate office. *Id.* at *12. The plaintiff contended this evidence, standing alone, justified conditional certification. The court disagreed.

The court refused to follow what it described as the plaintiff's request to "illogically infer that because she allegedly did not perform exempt functions and because [the defendant] classifies all ABMs as exempt, other ABMs also must not have performed exempt functions and are similarly situated to Plaintiff." *Id.* at *13. The court noted that "courts have readily exercised discretion and denied conditional certification motions when plaintiffs have relied on a common exemption status as the factor that binds a putative class together." *Id.* at *14. The court also found that allowing conditional certification under such a minimal showing would "ignore the requirement that plaintiff show she is *similarly situated to the employees [s]he proposes to include in the collective action* with respect to her claim that she performed non-exempt duties. *Id.* at *16 (*citing Guillen I*) (emphasis in original). The court held that even when courts have weighed a blanket exemption policy in favor of certification, the plaintiffs there submitted deposition/declaration testimony of "other allegedly aggrieved employees to demonstrate that similarly situated individuals do in fact exist." *Id.* at *16-17.

Thus, given the lack of factual support, the court could not justify ordering nationwide notice and, thus, denied conditional certification:

> Moore has neither filed any supporting declarations nor included deposition testimony of any other current or former ABMs to bolster her claim. The only evidence that other similarly situated individuals do exist is the addition of a single other opt-in member—too thin a reed on which to rest a nationwide certification. Without more, Plaintiff Moore fails to meet her modest burden.
>
> This Court cannot justify ordering and facilitating notice to a nationwide class of plaintiffs possibly numbering in the hundreds or thousands on the basis of such little factual support. Aside from mere allegations, Moore has hardly demonstrated a factual nexus between her alleged experiences at two PNC branches in southern Ohio and the experiences of current and former ABMs throughout the country. Moore instead asks the Court to make a logical leap, an exercise in which it will not engage. Accordingly, the Court will not conditionally certify the proposed class given the dearth of evidentiary support. (*Id.* at *17-18).

Likewise, in *Mike v. Safeco Ins. Co. of America*, 274 F. Supp. 2d 216 (D. Conn. 2003), the plaintiff was an insurance claims representative who sought FLSA collective treatment based on his claim that claims representatives were wrongfully classified as exempt. Like Carlone, the plaintiff claimed that although the job description for the position listed both administrative and non-administrative tasks, the majority of the actual tasks he performed were non-administrative. *Id.* at 220-21. The court found that because the plaintiff disavowed the job description, the merits of his claim would therefore require evidence regarding the plaintiff's and class members' day-to-day tasks, which precluded conditional certification. *Id.* at 221.

Furthermore, numerous other courts have also recently held that where, as here, no or very few other opt-in plaintiffs or prospective class members submitted declarations in support of the plaintiff's motion for conditional certification alleging they all performed similar duties, conditional certification should be denied irrespective of an alleged common job description, uniform training, or exempt status. *See, e.g., Guillen*, 2012 U.S. Dist. LEXIS 91639 (rejecting nationwide FLSA collective action involving 830 locations where plaintiff only submitted declarations from seven putative class members from a geographically centered area); *Vasquez v. Vitamin Shoppe Indus.*, 2011 U.S. Dist. LEXIS 74376, *10 (S.D.N.Y. July 11, 2011) ("geographically concentrated cluster of SMs who [plaintiff] claims were assigned duties inconsistent with their exempt classification - is too thin a reed on which to rest a nationwide certification."); *Bramble v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 39457 (E.D. Pa. Apr. 11, 2011) (denying conditional certification where the plaintiffs could not cite to any policy that required them to perform primarily non-exempt tasks and only provided testimony from four potential class members to support the allegation of a company-wide misclassification); *Ali v. New York City Health & Hosps. Corp.*, 2013 U.S. Dist. LEXIS 44091 (S.D.N.Y. Mar. 27, 2013)

(denying conditional certification where the plaintiff did not provide any testimony from other putative plaintiffs to show they were similarly situated); *Guillen*, 750 F. Supp. 2d 469, 479 (denying conditional certification where "there is virtually no basis on which to conclude that ASMs nationwide are similarly situated to [the plaintiff] with respect to his allegation that he spent the majority of his time performing non-managerial tasks."); *Khan*, 2011 U.S. Dist. LEXIS at *12-15 (denying conditional certification where the plaintiff "has not produced sufficient evidence that there are other employees who may share his claim" and noting that the requisite modest showing "cannot be satisfied simply by unsupported assertions.").

### C. Carlone's Request For Conditional Certification Fails Because He Has Not Shown That He Is Similarly Situated To Other CGAs

When this established law is applied to this case, Carlone has not come close to satisfying the factual showing necessary for conditional certification and notice to thousands of current and former Progressive CGAs at over 280 locations nationwide. Carlone's assertion that he is entitled nationwide certification boils down to the allegations that: (1) All CGAs have a common job title and a "common set of duties" as listed in the "list of accountabilities" document; (2) Progressive classifies all CGAs as exempt under the FLSA; and (3) all CGAs are misclassified as exempt "administrative employees. (*See* Pltf.'s Brief p. 14). Carlone's argument fails for numerous reasons.

#### 1. Carlone Has Failed To Show That He And The CGAs He Seeks To Represent Were Subject To A Common Policy Or Plan

Carlone's motion should be denied because he has not shown that he and the CGAs were subject to any common policy or plan, much less a common policy or plan that violated the law. *Myers*, 624 F.3d at 555; *Guillen I*, 750 F. Supp. 2d at 475. Presumably cognizant of his testimony that neither he nor any other Progressive CGA performed the job described in the CGA job description (and, thus, his inability to show that the CGA job description constitutes a

policy common to all CGAs), Carlone omits any reference to the CGA job description in his motion. Instead, Carlone makes the conclusory allegation that all CGAs are responsible for performing the duties set forth in the "accountabilities" list – a document neither party even cited in their extensive summary judgment briefings. (Pltf.'s Brief p. 14, Ex. E).

Moreover, Carlone has not shown that he, himself, was subjected to the "accountabilities" list, let alone provide evidence that the document applied to all CGAs nationwide. (*See* Sec. II(B) *supra*). This alone is fatal to his request for conditional certification. *See McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 444 (S.D.N.Y. 2012) ("[The plaintiff's] claim of company-wide policies is based on allegations made on 'information and belief' and not on his personal knowledge. Without more, [the plaintiff] has not satisfied his burden to show that a nationwide collective action is appropriate.").

In support of the alleged national application of the "accountabilities" list, Carlone only makes a general citation to the deposition of his former supervisor, Ms. Cedeno. (Pltf's Brief p. 5). However, Ms. Cedeno testified that she did not know what the "accountabilities" list was and said that it did not describe the functions of a CGA in her group. (Cedeno Dep. 115, Ex. 4). Carlone himself testified that the document only partially described his duties as a CGA, and he denied that he performed many of the listed duties such as making coverage and liability decisions. (Carlone Dep. 105-111, 113-117, 122-135, Exhibits 7 and 8). Thus, even if this were an operative document that applied to all CGAs, Carlone could not rely on it for certification. *See Mike v. Safeco Ins. Co. of America*, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (finding that a plaintiff cannot rely on a job description for conditional certification if the plaintiff testified that the job description does not accurately describe the job he performed).

Further, many of the allegedly uniform CGA duties and responsibilities that Carlone identifies in his brief, such as "coding" liability, requiring supervisor approval for claims decisions, and the allegation that CGAs are not "insurance adjusters," either are not supported or are directly contradicted by the very terms of the "accountabilities" list. (*See* Sec. III(B) *supra*). In short, Carlone has presented no evidence that the "accountabilities" list can serve as the requisite nexus that binds him and potential class members together as victims of a particular practice.

Finally, courts have soundly and repeatedly rejected Carlone's apparent assertion that he has established the requisite nexus between himself and the putative class by virtue of fact that all CGAs he seeks to represent are classified as exempt, use the same job aids, and/or allegedly performed the two-week training program.[7] *See, e.g., Guillen II*, 2012 U.S. Dist. LEXIS at *3 ("courts in this Circuit have routinely held that the mere fact of a common FLSA-exempt designation, job description, or uniform training is insufficient to find [individuals] 'similarly situated' for FLSA purposes.") (collecting cases); *Vasquez*, 2011 U.S. Dist. LEXIS *10-11 ("[T]he only thread plaintiff provides to link the handful of New York SMs and their counterparts nationwide is their common exempt classification. This is not sufficient, particularly in a case such as this where the employees perform a hybrid of [exempt and non-exempt] tasks."); *Moore*, 2013 U.S. Dist. LEXIS at *14 ("courts have repeatedly exercised discretion and denied conditional certification motions when plaintiffs have relied on a common exemption status as the factor that binds a putative class together"); *Jenkins*, 853 F. Supp. 2d at

---

[7] In addition, as described in Section III(A) *supra*, Carlone's scattershot citation to unexplained and often state-specific documents is also irrelevant because Carlone has failed to show that these documents applied to him, let alone all CGAs nationwide. *See, e.g., Armstrong v. Weichert Realtors*, 2006 U.S. Dist. LEXIS 31351 at *7 (D.N.J. May 16, 2006) (denying FLSA conditional certification and finding the plaintiffs evidentiary submissions "meaningless" where the submission were unidentified, unauthenticated, and did not permit the court to "infer how these purported policies and practices affect [the purported class members].").

324 (conditionally certifying a collective action based on common exemption status "ignores the requirement that plaintiff show he is similarly situated to the employees he proposes to include in the collective action with respect to his claim that he performed non-exempt duties."); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("focusing on a uniform exemption policy alone does little to further the . . . assessment of the relationship between the individual and common issues.").

The court in *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010), recently provided the following compelling explanation as to why classifying a group of employees as exempt cannot alone be the nexus that binds an FLSA collective action:

> [T]he mere classification of a group of employees--even a large or nationwide group--as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as "similarly situated" for § 216(b) purposes. If it were, in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification, irrespective of the quality or quantity of evidence that had been produced in the form of declarations and supporting exhibits.

Thus, Carlone has attempted to meet his burden of identifying a uniform policy or plan entirely on unsubstantiated conclusory allegations and a common exemption policy – which is precisely what the Second Circuit and numerous other courts forbid. Carlone's motion should be denied for this reason alone.

2. Conditional Certification Also Should Be Denied Because Carlone Has Not Shown Any Other CGA Primarily Performed Non-Exempt Duties

Even if Carlone had shown that the "accountabilities" list constituted a common policy that applied to Carlone and the other CGAs nationwide, conditional certification still would be inappropriate because Carlone has made no attempt to demonstrate that the policy was illegally applied, i.e., that other CGAs also were required to primarily perform non-exempt duties. *Myers*, 624 F.3d at 555; *Jenkins*, 853 F. Supp. 2d at 322. It is indisputable that the "accountabilities" list

contains exempt duties, and Carlone does not allege that the document is illegal on its face. Decisions in *Guillen*, *Moore, Mike*, *Harriel*, *Bramble* and *Jenkins* all verify that to obtain conditional certification based on such an alleged common policy that is legal on its face, plaintiffs must provide at least some evidence that the policy was applied on a class wide basis to deprive individuals of overtime who primarily performed non-exempt work. In short, Carlone must show that "he is similarly situated *to the* [thousands of] *employees he proposes to include in the collective action* with respect to his claim that he performed non-exempt duties."[8] *Jenkins*, 853 F. Supp. 2d at 324-25; *see also Bramble*, 2011 U.S. Dist. LEXIS at *19-20 (when a plaintiff is unable to point to a job description under which he or she "are required to perform non-exempt tasks for a majority of their working hours," he or she must provide evidence that "the work [putative class members nationwide] perform or performed should not qualify for an exemption to the FLSA's overtime pay requirement.").

Carlone has provided no such evidence. He has presented no evidence outside of his own conclusory statements that any CGA other than himself primarily performed non-exempt duties. Carlone has not provided a single declaration, affidavit, or deposition testimony from another CGA. Nor can Carlone rely on his own basis of knowledge to support his allegation that other CGAs across the country also performed non-exempt duties because: (1) Carlone never worked outside of Connecticut as a CGA; (2) never watched any CGA outside of Connecticut handle claims; and (3) never talked to any CGAs outside of Connecticut and Rhode Island as to how they performed their jobs. (Carlone Dep. 34-35, 84-85). While Carlone may have some personal knowledge as to how his fellow Connecticut CGAs performed their job, he cannot even show he was similarly situated to these individuals, as they have definitively testified that, unlike

[8] It is important to note that the inquiry as to whether Carlone has met his burden of sufficiently identifying individuals who are similarly situated to him is not an inquiry into the merits, but rather part of the Court's requisite duty in determining if conditional certification is appropriate. *Jenkins*, 853 F. Supp. 2d at 322.

Carlone, they primarily performed the very exempt duties set forth in the CGA job description that Carlone has disclaimed. (*See* Sec. II(E) *supra*).

These differences also highlight the fact that this case is not appropriate for collective treatment because individualized inquiries into the job duties performed by each CGA will ultimately be necessary to determine whether each CGA, in fact, was properly classified as exempt under the administrative exemption. *See* 29 C.F.R. § 202(b) (exemption determination requires an individualized inquiry into "all the facts involved in the particular employment situation in which the question arises"); *Mike*, 274 F. Supp. 2d at 221 (denying conditional certification and finding that "proving liability for the alleged FLSA violation . . . requir[es] individualized examination of each employee's duties according to the multi-factorial tests of what properly constitutes work in a bona fide [] administrative capacity."); *Adeel Tahir v. Avis Budget Group, Inc.*, 2011 U.S. Dist. LEXIS 37279 (D.N.J. Apr. 6, 2011) (same).

This is particularly true here, where: (1) Carlone has already acknowledged in summary judgment briefing that this Court would have to perform a "fact intensive" inquiry into each putative class member (ECF Doc. 61, p. 19); and (2) Carlone's testimony that he did not perform the job of an exempt insurance adjuster as described in 29 C.F.R. § 541.203(a) is directly contradicted by his own ClaimStation entries. (*See* Sec. II(E) *supra*). Thus, not only do Carlone's own written words undercut his ability to show that he or any other CGA were "victims of a common policy or plan that *violated the law*" (*Myers*, 624 F.3d at 555), but his ClaimStation entries verify that any collective action will require a page-by-page, person-by-person analysis of thousands of ClaimStation entries to determine how each CGA performed his/her job. This is manifestly unmanageable.

Thus, "[Carlone] has hardly demonstrated a factual nexus between [his] alleged experiences at two [Progressive] branches in [Connecticut] and the experiences of current and former [CGAs] throughout the country." *Moore*, 2013 U.S. Dist. LEXIS 74845 at *17-18. Indeed, by failing to provide evidence of a common policy and not identifying a single other CGA who shares his claim, Carlone has provided <u>less</u> factual support for his certification motion than the plaintiffs' failed submissions in *Guillen*, *Moore, Jenkins*, and the host of other cases cited above. As such, Carlone has not demonstrated that he is similarly situated to the individuals he seeks to represent and his conditional certification motion should be denied.

### D. <u>The Lack Of Opt-In Plaintiffs Also Weighs Against Certification</u>

Carlone also incorrectly asserts that the absence of a single other opt-in plaintiff – despite 17+ months of litigation – is irrelevant to the certification inquiry. This is nonsense. While this may not be dispositive, "we find [the fact that the plaintiff was unable to produce a single other individual interested in participating as a plaintiff in the case after 5-months] telling." *Khan*, 2011 U.S. Dist. LEXIS 133134 (S.D.N.Y. Nov. 16, 2011); *see also O'Donnell v. Robert Half Int'l, Inc.*, 429 F. Supp. 2d 246, 250 (D. Mass. 2006) (denying certification in part because the "plaintiffs have failed to demonstrate that any of the putative class members are interested in joining the suit" and noting that "Courts have considered such interest to be a requirement to justify conditional certification of a class."); *Barnes v. Abandonment Consulting Servs.*, 2013 U.S. Dist. LEXIS 105702 at *13 (S.D. Tex. July 26, 2013) (denying conditional certification and finding that "perhaps most crucially, [plaintiff] cannot show that any [prospective class members], even assuming they are 'similarly situated,' wish to opt-in to this lawsuit.").

Here, as previously discussed, Carlone's motion for conditional certification fails because he has not demonstrated that he is similarly situated to the class he seeks to represent. Moreover,

the fact that not a single plaintiff has joined Carlone's lawsuit in the 17+ months since he filed his Complaint is telling and an additional factor weighing against certification.

### E. Carlone's Cited Legal Authorities Are Inapposite

Unable to show that he is similarly situated to the class he seeks to represent, Carlone resorts to citing inapposite cases and misstating their holdings to support his untenable position that conditional certification should be granted based on a blanket exemption policy, an irrelevant "accountabilities" document, and his claim that he performed non-exempt duties. While Carlone cites to cases in which there was a common legal policy, he has not demonstrated that one exists at Progressive. Moreover, the plaintiffs in those cases largely provided evidence that despite a facially legal uniform policy, individuals across multiple locations all primarily performed the same type of non-exempt duties – evidence which Carlone entirely lacks. *See Jenkins*, 853 F. Supp. 2d at 323-24 (distinguishing many of the cases Carlone cites).

For instance, while Carlone heavily relies on *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606, 620 (D. Conn. 2007), *Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213, 227, 230 (D. Conn. 2012), and *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 155 (S.D.N.Y. 2008), those cases have no application here. In *Neary*, the court relied on the fact that the defendant's representative testified that the plaintiff and the putative class members "all held the same or similar position and had the same or similar responsibilities and daily tasks." In contrast, Ms. Kramer testified that it would be necessary to speak with each Progressive CGA manager to know how their employees perform their jobs. (Kramer Dep. 13-14).

In *Zaniewski*, the plaintiff submitted declarations from five putative class members who worked at 12 of the defendant's 47 locations. Here, Carlone has only submitted the declaration of one CGA (himself) as to his experience at one of Progressive's 280+ facilities. Carlone, of course, has no knowledge about what CGAs do at the facilities where he never worked.

In *Damassia*, the court granted certification of a state law claim under Rule 23 based on a well-established factual record as to a uniformity of duties among the class. More notable is the *Damassia* court's decision two years prior in which it granted conditional FLSA certification where 20 individuals opted in during a one-month period and claimed to be similarly situated, and the defendant conceded that "one can draw accurate conclusions about [putative class members] company wide by looking at [putative class members in . . . [a single location]." *Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 5, 2006). No such evidence exists here. The remainder of Carlone's cited authority is likewise readily distinguishable and should be disregarded.[9]

### F. Carlone Has Not Met His Burden To Justify Notice To A Nationwide Class

Thus, stated simply, Carlone has not offered a single citation that would warrant certifying a 2,000+ person class across 49 states and at over 280 locations based solely on the

[9] *See, e.g., Alli v. Boston Market Co.*, 2011 U.S. Dist. LEXIS 101530 (D. Conn. Sept. 8, 2011) (the plaintiffs provided testimony from multiple plaintiffs who worked at several of the defendant's stores and there was evidence that all the plaintiffs followed the same corporate job routines); *Morrison v. Ocean State Jobbers, Inc.*, 2010 U.S. Dist. LEXIS 48560 at *8-9 (D. Conn. May 17, 2010) (the plaintiff had personal knowledge with respect to each of the defendant's stores and relied on a uniformly applied and accurate job description); *Perkins v. S. New Eng. Tel. Co.*, 669 F. Supp. 2d 212, 214, 219-20 (D. Conn. 2009) (submitting testimony from the 5 named plaintiffs and 60 opt-in plaintiffs demonstrating that they all performed similar duties); *Marcus v. Am. Contract Bridge League*, 254 F.R.D. 44 (D. Conn. 2008) (affidavits from multiple putative plaintiffs and finding by the court that since the plaintiffs "embrace[d]" the job description, the type of individual inquires present in *Mike v. Safeco Ins. Co. of America*, 274 F. Supp. 2d 216 (D. Conn. 2003), would not be present); *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 104 (D. Conn. 2007) (the plaintiff relied on a job description that the employer admitted accurately described the job duties of all class members and applied to all the class members during the relevant period); *Garcia v. Freedom Mortg. Corp.*, 2009 U.S. Dist. LEXIS 103147 at *9-10 (D.N.J. Nov. 2, 2009) (plaintiff submitted 8 signed affidavits which described, based on personal knowledge, the similar duties performed by putative class members in 10 different states); *Francis v. A&E Stores, Inc.*, 2008 U.S. Dist. LEXIS 83369 at * 7-8 (S.D.N.Y. Oct. 15, 2008) (the defendant admitted that the job description upon which the plaintiff relied accurately described the duties of all putative class members and that the duties of the class members were "more or less" the same at all of the defendant's stores); *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224 (W.D.N.Y. 2006) (plaintiffs challenged an auto-deduct policy and submitted affidavits from plaintiffs and potential class members regarding their own circumstances and their personal knowledge with respect to others); *Cano v. Four M Food Corp.*, 2009 U.S. Dist. LEXIS 7780 at *3-4, 15-16 (E.D.N.Y. Feb. 3, 2009) (plaintiff grocery store workers submitted two named plaintiff and two opt-in affidavits with each naming numerous specific individuals to whom they alleged were similarly situated in multiple locations); *Manning v. Goldbelt Falcon*, LLC, 2010 U.S. Dist. LEXIS 104029 at *10 (D.N.J. Sept. 29, 2010) (conditional certification granted based on the alleged uniform application of a facially illegal auto-deduct policy).

fact that CGAs are classified as exempt and Carlone's testimony that he personally performed primarily non-exempt duties. He relies on an assortment of documents without evidence or testimony that they applied to him, much less to all CGAs nationwide. He conspicuously ignores the CGA job description – the only possible document that could apply to CGAs nationwide – undoubtedly because it sets forth exempt job duties. Moreover, based on Carlone's own ClaimStation entries, it is clear that collective treatment of this case would require the wholly unmanageable task of a person-by-person analysis of the work performed by each CGA to determine exempt status. In short, Carlone offers no factual nexus between his alleged experience as a CGA and those of the other current and former CGAs across the country. Thus, Carlone's request for notice under 29 U.S.C § 216(b) should be denied, because he has failed to make the "modest" factual showing necessary for conditional certification.

### G. Because Carlone's Motion For Conditional Certification Should Be Denied, His Overreaching Requests For Equitable Tolling Of The Statute Of Limitations And Inappropriate Notice Content Are Irrelevant And Need Not Be Considered

As demonstrated in detail above, because Carlone has utterly failed to meet his burden of showing that conditional certification is appropriate, the 8 pages of his briefing discussing the applicable statute of limitations and the nature and extent of his requested notice are irrelevant and need not be considered. However, because Carlone has made these arguments, Progressive will address them in turn.

#### 1. Equitable Tolling of the Statute of Limitations Is Not Appropriate In This Case

Carlone immediately overreaches by requesting that equitable tolling of the statute of limitations apply in this case. An action under the FLSA commences for each putative plaintiff on the date the individual opts into the suit by filing his/her own written consent, 29 U.S.C. § 256. Once an opt-in is filed, it tolls the two- or three-year statute of limitations for that plaintiff.

29 U.S.C. § 255(a). Carlone instead seeks to toll the statute of limitations as of his filing of his motion on July 22, 2013, without regard to the timing of any putative plaintiff's opt-in consent. Carlone bases this request on the assertions that he has been diligent as to the filing of his present motion and that "the opt-in plaintiffs are not aware of their right to join this suit . . . ." (Carlone Brief at 21).

Equitable tolling is "a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396, 127 S. Ct. 1091, 166 L.Ed.2d 973 (2007). In the Second Circuit, "equitable tolling is only appropriate in [] rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Authority*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotations and citations omitted) (alteration in original); *see also Perkins v. Southern New England Telephone Co.*, 2009 U.S. Dist. LEXIS 103833 at *18 (D. Conn. Nov. 4, 2009) ("[A] district court must consider whether the person[s] seeking application of the equitable tolling doctrine (1) ha[ve] acted with reasonable diligence during the time period [they] seek[] to have tolled, and (2) ha[ve] proved that the circumstances are so extraordinary that the doctrine should apply."). *Zerilli-Edelglass*, 333 F.3d at 81 (citation and internal quotation marks omitted) (alterations added).

First, the suggestion that members of the putative collective class are unaware of this lawsuit and their rights is objectively untrue. As Carlone knows, at least one individual from Pennsylvania initially opted in to this lawsuit on June 16, 2012 (ECF No. 31), only to file a voluntary dismissal form shortly thereafter on August 3, 2012 (ECF 39), which left Carlone with no opt-ins. In the meantime, many of Carlone's own coworkers have submitted declarations that they performed exempt work. Thus, particularly since Carlone is a current employee and there

has been at least one person who opted in for a limited period of time before dismissing, Carlone's suggestion that tolling is justified on the basis that putative opt-in plaintiffs are not aware of their rights should be rejected.

Beyond this, such requests for equitable tolling are routinely rejected. For instance, in *Gordon v. Kaleida Health*, 2009 U.S. Dist. LEXIS 95729 (W.D.N.Y. Oct. 14, 2009), the court rejected the argument that putative opt-in plaintiffs did not have the opportunity to act on their rights under the FLSA because they were unaware of the lawsuit. The court observed that the underlying right at issue is the right to overtime pay for hours worked over forty (40) per week.[10] Thus, in rejecting the request for equitable tolling, the court noted that "Plaintiffs here have offered no allegations or proof from which the Court can conclude that a reasonably prudent potential plaintiff would not have known of his or her right to receive overtime pay after 40 hours. Pursuit of that right is not dependent on the commencement or certification of a collective action, and a reasonably diligent person could have acted by pursuing an individual or collective action for relief." *Gordon*, 2009 U.S. Dist. LEXIS 95729 at *42; *see also Arena v. Plandome Taxi Inc.*, 2013 U.S. Dist. LEXIS 58169 at *4, 7 (E.D.N.Y. Apr. 23, 2013) (rejecting plaintiffs' argument that tolling was appropriate because potential class members had not been apprised of the dispute).

Similarly, in *Perkins*, 2009 U.S. Dist. LEXIS 103833 at *19, the court refused to apply equitable tolling because plaintiffs did not allege that any potential class member was "prevented from exercising their rights in some extraordinary way, nor have they shown that [Defendant's] misleading conduct prevented potential class members from becoming aware of their cause of action." *See also Ritz v. Mike Rory Corp.*, 2013 U.S. Dist. LEXIS 67840 at *8 (E.D.N.Y. May

---

[10] There is no right to receive notice of a collective action under the FLSA. Rather, the provision of notice to putative opt-in plaintiffs is within the trial court's discretion. *See Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).

13, 2013) (denying equitable tolling because lapse between plaintiff's filing initial and supplemental affidavits was "de minimis"); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 2012 U.S. Dist. LEXIS 127824 at *18–19 (S.D.N.Y. Sept. 6, 2012) (denying equitable tolling because FLSA plaintiffs "have not otherwise proven . . . that their circumstances are extraordinary").

Carlone has not made any showing to justify that the "rare remedy" of equitable tolling should be applied here. Contrary to the cases Carlone cites, Carlone has not alleged that Progressive has acted improperly to delay this litigation or otherwise frustrated Carlone's attempt to diligently pursue his claims, nor has he shown any "extraordinary" procedural circumstances which would justify tolling.[11] While Carlone cites the approximately 13-month period between the parties' summary judgment briefing and the Court's ruling as preventing putative class members from timely learning of the lawsuit, there is no evidence that Progressive's actions or this Court's rulings in this case provide any grounds for tolling. *See Gordon*, 2009 U.S. Dist. LEXIS 95729 at *43 ("[u]nfortunately, the time for consideration of the conditional certification and related motions is reflective of an increasing caseload in this District and does not constitute an extraordinary circumstance for tolling purposes.").

Thus, irrespective of the fact that conditional certification is improper, Carlone has not demonstrated that equitable tolling would otherwise apply.

2. <u>Carlone Has Proposed An Inappropriate And Overreaching Notice And Proposed Opt-In Form</u>

Carlone's proposed notice and proposed opt-in forms are unnecessarily complicated and inappropriate. They are replete with inaccurate and confusing statements, heavy-handed

[11] For instance, in *Yahraes v. Rest. Assocs. Events Corp.*, 2011 U.S. Dist. LEXIS 23115 at *9 (E.D.N.Y. Mar. 8, 2011), the court permitted tolling after finding that the defendants "frustrated plaintiffs' diligent attempts to ensure that claims did not expire." No such evidence exists here, and even then the court did not toll the entire period.

communications, and invasive disclosure requirements that would unduly compromise the privacy of Progressive employees. Progressive has attached an opt-in notice (Exhibit 24) and consent form (Exhibit 25) which, had Carlone met his conditional certification burden, would have provided lawful and accurate notice. The reasoning for Progressive's primary objections to Carlone's improper proposed notice and consent forms as set forth in Exhibits 24 and 25 is explained below.

a. Use of the term "File Owners" is confusing and inaccurate

Although Carlone refers to himself and putative opt-ins as "File Owners," and that term can be used as an informal description for the Claims Generalist Associate position, it is undisputed that Carlone's official job title during the relevant time period was Claims Generalist Associate. Thus, Claims Generalist Associate is the proper description for the at-issue position.

b. There is no evidence that Progressive violated the FLSA, let alone evidence that Progressive "willfully" violated the FLSA to justify a 3-year statute of limitations

While courts often permit a plaintiff to send Notice of the collective action to those who were employed during the three-year period prior to the date of the Order or to the mailing of the Notice upon a proper showing of a willful violation, Carlone has not shown that Progressive has committed any violation of the FLSA, let alone a willful violation. A finding of willfulness requires proof that the employer act with knowledge that its actions were unlawful or with reckless disregard for the legality of its actions, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988), proof utterly missing here. The notice should reflect a 2-year period, not 3.

c. The rights and obligations of opt-in plaintiffs is omitted

Opt-in notices should describe an opt-in plaintiff's discovery and litigation obligations and clearly explain that an opt-in plaintiff may be required to give testimony and produce information and/or documents about their work for the defendant. *See Rosario v. Valentine*

*Avenue Discount Store, Co., Inc.*, 828 F. Supp. 2d 508, 520 (E.D.N.Y. 2011). Carlone's proposed Notice fails to do this.

Furthermore, Carlone's proposed Notice fails to address the effect of an opt-in plaintiff's decision to join the lawsuit with respect to potential costs. Provisions such as the following have been generally found to provide the necessary information:

> **If you choose to join in this case, you will be bound by the Judgment, whether it is favorable or unfavorable. You may also be held liable for costs associated with this lawsuit.**

*See Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 98 (S.D.N.Y. 2003).

Carlone's proposed Notice also omits any reference to the effect of an opt-in plaintiff's decision to join the lawsuit in respect of his/her relationship with plaintiff's counsel. Provisions such as the following have been generally found to provide the necessary information:

> **If you sign and return the Consent to Join Collective Action form attached to this Notice, you are agreeing to designate the class representative as your agent to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the representative Plaintiff will be binding on you if you join this lawsuit.**
>
> **The attorneys for the class plaintiff is being paid on a contingency fee basis, which means that if there is no recovery there will be no attorney's fee. If there is a recovery, the attorneys for the class will receive a part of any settlement obtained or money judgment entered in favor of all members of the class. The court has retained jurisdiction to determine the reasonableness of any contingency agreement entered into by the Plaintiff with counsel.**
>
> **Furthermore, you can join this lawsuit by representing yourself or by retaining counsel of your own choosing. If you do so, your attorney must file the "opt-in" consent form with the Court by December 31, 2013.**

*See Gjurovich*, 282 F. Supp. 2d at 98-99; *see also Rosario*, 828 F. Supp. 2d at 520.

d. The Notice could be read to infer that the Court endorses Carlone's claims on the merits

Carlone's proposed Notice includes, in bold-faced type in the last paragraph, the statement that the Notice has been "authorized by the United States District Court" and is separated by several paragraphs from language that does not appear in bold-faced type regarding the Court not having made a decision on the merits of the claims or defenses. The layout of Carlone's proposed Notice could be viewed as calling the Court's neutrality and prior rulings on the case into question. Provisions such as the following eliminate any such misconceptions:

> **The Court has approved the sending of this Notice, but the Court has expressed no opinion on the merits of this lawsuit. A final decision on the merits of this lawsuit has not been made by the Court.**

*See Rosario*, 828 F. Supp. 2d at 520-21.

e. Consent forms are properly sent to the Courts – not plaintiffs' counsel

Carlone's proposed Notice improperly directs putative opt-in plaintiffs to transmit the Opt-In Form to Carlone's counsel rather than to the Court. Courts have opined that such a procedure implicitly discourages opt-in plaintiffs from selecting other counsel and have required the Notice to direct them to file their consent forms with the Clerk of Court. *Rosario*, 828 F. Supp. 2d at 521, *citing Lujan v. Cabana Mgmt., Inc.*, 2011 U.S. Dist. LEXIS 9542 at *45–46 (E.D. N.Y. Feb. 1, 2011). Thus, provisions such as the following, which direct opt-in plaintiffs to file consent forms with the Court as opposed to plaintiffs' counsel, are appropriate:

> **In order to join this lawsuit as a party plaintiff you must return the enclosed "opt-in" consent form to the address below no later than December 31, 2013.**
>
> **Clerk of Court**<br>**United States District Court for the District of Massachusetts**<br>**1 Courthouse Way, Suite 2300**<br>**Boston, Massachusetts 02210**

f. <u>Carlone's requested dissemination of his proposed Notice via e-mail and workplace postings is unduly broad and unnecessary</u>

While it is proper to submit opt-in notices via First Class United States Mail, Carlone's assertion that notice should also be issued in this case via e-mail and workplace postings is incorrect. As noted by the court in *Gordon*, 2009 U.S. Dist. LEXIS 95729 at *36, courts have expressed concern that "notification by electronic mail could create risks of distortion or misleading notification through modification of the notice itself or the addition of commentary." Further, "[a]s for posting . . . I find the request[] premature. [Defendant] has not yet produced employee contact information and there is no reason, at this juncture, to assume that production will not be complete and accurate. Moreover, the only group that will be reached by posting are current employees, who have an interest in providing their employer with an up-to-date mailing address." *Id.* at *36; *see also Hinterberger v. Catholic Health Sys.*, 2009 U.S. Dist. LEXIS 97944 at *41–42 (W.D.N.Y. Oct. 21, 2009). In short, First Class U.S. Mail is the "best notice practicable." *Gordon*, 2009 U.S. Dist. LEXIS 95729 *37.

g. <u>Carlone's proposed notice does not adequately protect the privacy interests of potential opt-in plaintiffs</u>

Carlone has requested that the Court order Progressive to provide a list of potential opt-in plaintiffs' names, last-known mailing addresses, last-known telephone numbers, e-mail addresses, work locations, dates of employment and social security numbers (for persons whose notices are returned as undeliverable). Although disclosing the names, addresses, dates of employment and work location is generally considered appropriate, Progressive objects to any request that it provide the telephone numbers, e-mail addresses and Social Security numbers for its current and former employees. *See Gordon*, 2009 U.S. Dist. LEXIS 95729 at *31; *see also*

*Colozzi v. St. Joseph's Hospital Health Center*, 595 F. Supp. 2d 200, 210 (N.D.N.Y. 2009); *Hinterberger*, 2009 U.S. Dist. LEXIS 97944 at *36.[12]

h. Reminder postcards are unnecessary and could be interpreted as encouragement to join the lawsuit

Carlone asserts that this Court should authorize the mailing of a reminder postcard to all class members who have not yet opted-in to this matter within 45 days of the first notice mailing. But Carlone has not shown why a reminder notice is necessary. *See Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d.340, 358 (E.D.N.Y. 2012) (denying reminder notice because plaintiffs did not identify any reason why it would be necessary). Courts that have addressed the propriety of authorizing reminder notices in FLSA cases have consistently refused to authorize the reminder because it "potentially could be interpreted as encouragement by the court to join the lawsuit." *Witteman v. Wisconsin Bell, Inc.*, 2010 U.S. Dist. LEXIS 8845 at *10 (W.D. Wis. Feb. 2, 2010); *see also Knispel v. Chrysler Group LLC*, 2012 U.S. Dist. LEXIS 21188 at *21–22 (E.D. Mich. Feb. 21, 2012) (reminder denied because it could be interpreted as encouragement to join the dispute); *Robinson v. Ryla Teleservices, Inc.*, 2011 U.S. Dist. LEXIS 147027 at *21–22, n.7 (S.D. Ala. Dec. 21, 2011) (adopting the reasoning in *Witteman*). Carlone has not shown why a reminder notice is necessary, and because the reminder could be interpreted as encouragement by the Court to join the lawsuit, his request for a reminder notice is improper.

In sum, Carlone's requested notice and opt-in form overreaches in many significant respects. Because Carlone has failed to establish that he is entitled to have notice issued to the

---

[12] Social security numbers are not properly provided even when notices are returned as undeliverable. Contrary to Carlone's suggestion, the court in *Capsolas v. Pasta Res. Inc.*, 2011 U.S. Dist. LEXIS 49936 (S.D.N.Y. May 9, 2011), did not order the production of such social security numbers. Rather, they were provided upon agreement between the parties. However, if social security numbers are ordered to be produced for any undeliverable notices, Progressive requests that such order include a provision precluding the disclosure of such information to anyone other than Carlone's counsel (which prohibition includes consultants, experts or Carlone himself), that it is to be used only for purposes of attempting to locate the putative collective action member and that, upon termination of this lawsuit, Carlone's counsel shall certify in writing to Progressive that the social security numbers have been destroyed.

putative collective action class under 29 U.S.C. § 216(b), the Court need not reach these issues. Nevertheless, for the reasons stated, if notice is ordered to be issued, Progressive requests that the Form of Notice and Opt-In form set forth in Exhibits 24 and 25 hereto be adopted by this Court.

## V. CONCLUSION

Despite over a year of litigation, Carlone has failed to show that he is similarly situated to a single other individual who he seeks to represent. There has been no interest in the lawsuit from any other CGAs. He has not demonstrated a uniform illegal policy or plan that applied to himself, let alone all CGAs. Thus, sending out notice to over 2,000 CGAs nationwide would do little more than "waste the Court's and litigants' time and resources." Carlone's request for conditional certification and notice should therefore be denied.

Respectfully submitted,

*s/ Lori B. Alexander*

Lori Alexander- Fed. Bar No.: CT08970
LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street, Suite 300
New Haven, CT 06510
Telephone:(203) 974-8700
Facsimile:(203) 974-8799
Email: LAlexander@littler.com

Gregory V. Mersol (PHV-05436)
Stephen C. Sutton (PHV-05445)
BAKER & HOSTETLER LLP
PNC Center
1900 East Ninth Street, Suite 3200
Cleveland, OH 44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Email: gmersol@bakerlaw.com
ssutton@bakerlaw.com

Attorneys for Defendant Progressive Casualty Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2013, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

In addition, a complete, duplicate copy of this document has been forwarded directly to Judge Young in Boston, MA.

/s/ *Lori B. Alexander*

Lori Alexander- Fed. Bar No.: CT08970
LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street, Suite 300
New Haven, CT 06510
Telephone:(203) 974-8700
Facsimile:(203) 974-8799
LAlexander@littler.com